**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**ERWIN ROSENBERG,**

                              **Plaintiff,**

                    **-against-**

**TONYA LASHUN AVERY, in her official capacity as agent of The Florida Bar, DOROTHY ANDERSON, in her official capacity as agent of the Massachusetts Office of the Bar Counsel, and MICHAEL K. CREASER, in his official capacity as agent of the New York Attorney Grievance Committee for the Third Judicial Department,**

                              **Defendants.**

**25-cv-222 (ALC)**

**OPINION & ORDER**

**ANDREW L. CARTER JR., United States District Judge**:

        Plaintiff Erwin Rosenberg, a lawyer appearing *pro se*, brings procedural due process

claims under 42 U.S.C. § 1983 against agents of authorities regulating the legal profession in

three states:  Tonya Lashun Avery (in her official capacity as agent of the Florida Bar); Dorothy

Anderson (in her official capacity as agent of the Massachusetts Office of the Bar Counsel); and

Michael K. Creaser (in his official capacity as agent of the New York Attorney Grievance

Committee for the Third Judicial Department).  Rosenberg's claims stem from attorney

discipline imposed on him in Florida, which ultimately led to his disbarment in that state, and his

subsequent reciprocal disbarment in Massachusetts and New York.  The Complaint challenges

the constitutionality of the process afforded to Rosenberg in all three states and demands

prospective declaratory and injunctive relief.

        Pending before the Court are various motions, all of which are resolved in this opinion.

Specifically, the Court considers (1) Rosenberg's motions for default judgment as to Defendants

Anderson and Avery; (2) each Defendant's motion to dismiss Rosenberg's Complaint; (3)

Rosenberg's motion for a preliminary injunction; and (4) Rosenberg's amended motion to amend the Complaint.  For the reasons set forth below, Defendants Avery's and Anderson's motions to dismiss the Complaint are **GRANTED**, Rosenberg's motions for default judgment are **DENIED** as moot, Defendant Creaser's motion to dismiss the Complaint is **GRANTED in part and DENIED in part**, Rosenberg's motion for a preliminary injunction is **DENIED**, and Rosenberg's amended motion to amend the Complaint is **GRANTED**.

## BACKGROUND

### I.    Factual Background

For the purposes of resolving a motion to dismiss, the Court is generally limited to reviewing the allegations in the complaint and documents attached to it or incorporated by reference.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–54 (2d Cir. 2002).  The Court therefore takes judicial notice of records of the state court proceedings referenced in Rosenberg's Complaint.  *Toliver v. City of N.Y.*, Nos. 10-cv-3165, 10-cv-6619, 2011 WL 4964919 at *3 (S.D.N.Y. Sept. 15, 2011) (noting that "federal courts are empowered to take judicial notice of state court records and decisions" when considering a motion to dismiss), *report & rec. adopted*, 2011 WL 4964665 (S.D.N.Y. Oct. 28, 2011).

#### a.    Rosenberg's Conduct in Florida

Rosenberg was formerly licensed to practice law in Florida, Massachusetts, and New York.  *See generally* ECF No. 1 ("Compl.").  Beginning in March 2006, Rosenberg was hired to represent defendants in an ongoing civil proceeding in Miami-Dade County, Florida.  *Id.* ¶ 1; *see also Fla. Bar v. Rosenberg*, 169 So. 3d 1155, 1157 (Fla. 2015).  At the time the defendants hired Rosenberg, the parties were litigating requests by the plaintiffs to compel the production of certain documents.  *Rosenberg*, 169 So. 3d at 1156–57.  In April 2006, the court ordered

2

Rosenberg's clients (the defendants) to produce certain documents within five days of the entry of the order. Compl. ¶ 1; *Rosenberg*, 169 So. 3d at 1156–57.

In September 2006, the case was transferred to a circuit court in Palm Beach County, Florida, but Rosenberg's clients had not yet complied with the document production ordered by the prior court the previous April. *Rosenberg*, 169 So. 3d at 1157. Over the course of months, plaintiffs filed various iterations of their motions to compel production—which the new judge granted—as well as motions for sanctions and contempt against the defendants. *Id.* Rosenberg generally either objected to the production requests or maintained that he had complied with them. *See id.* On July 24, 2007, the court granted the plaintiffs' sixth combined motion to compel, for contempt, and sanctions, and the court further ordered that an evidentiary hearing be held on an order to show cause as to why Rosenberg should not be sanctioned for bad faith conduct. *Id.* However, on July 30, 2007, Rosenberg withdrew as counsel for defendants in the case. *See id.*; Compl. ¶ 1.

On August 7, 2007, the same trial judge entered an order setting a hearing on the show cause order for August 24, 2007. *Rosenberg*, 169 So. 3d at 1157. Rosenberg filed a motion to dismiss the order to show cause, arguing that the court failed to provide sufficient notice or opportunity to be heard, but the court denied Rosenberg's motion. *Id.* at 1157–58. At the August 24 hearing, Rosenberg declined to testify on his behalf, but the plaintiffs called him as an adverse witness and he testified that "he believed he had complied with the orders to compel production by simply providing the few documents his clients had given him, without reviewing those documents." *Id.* at 1158. On September 14, 2007, the court entered an order finding that Rosenberg acted in bad faith (based in part on a finding that Rosenberg flouted the court's orders) and imposed a sanction of $20,000 in attorney's fees. *Id.*; Compl. ¶ 1. Rosenberg

appealed the court's order, and a state appeals court affirmed.  Compl. ¶ 2; *see also Rosenberg v. Gaballa*, 1 So. 3d 1149, 1150 (Fla. Dist. Ct. App. 2009).

###### b.  The State Bar Disciplinary Actions

The plaintiffs from the civil proceeding were unable to collect the sanction fee from Rosenberg due to his limited economic situation (Rosenberg admits that he did not pay the sanction fee), and they subsequently complained to the Florida Bar.  Compl. ¶ 3.  In October 2013, the Florida Bar filed a complaint against Rosenberg alleging that he had engaged in misconduct in violation of the Florida Bar Rules based on his conduct in the civil proceeding.  Compl. ¶ 3; *see also Rosenberg*, 169 So. 3d at 1156–59.  Rosenberg specifically alleges that "the Florida Bar accused [him] of not cmplying [sic] with a compelled notice of the discipline to third parties which included a requirement to notify 'state, federal, or administrative bars of which respondent is a member.'"  Compl. ¶ 4.

A referee was appointed to consider the matter and, on May 28, 2015, the Florida Supreme Court issued an order in which it recited the referee's findings of fact and recommendations as to Rosenberg's violations of various Florida Bar Rules.  *Rosenberg*, 169 So. 3d at 1156.  Specifically, the referee recommended that Rosenberg be found in violation of the following Florida Bar Rules:

> 4–1.1 (a lawyer shall provide competent representation to a client); 4–3.4(d) (a lawyer must not in pretrial procedure, make a frivolous discovery request or intentionally fail to comply with a legally proper discovery request by an opposing party); and 4–8.4(d) (a lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice).

*Id.* at 1158.  The Florida Supreme Court agreed with all of the referee's findings as to Rosenberg's guilt, but disagreed with the referee's recommended sanction (a 90-day suspension from the practice of law) and instead ordered a one-year suspension warranted by Rosenberg's conduct and the aggravating factors found by the referee.  *Id.* at 1161–62.

Despite his suspension, Rosenberg continued to practice law and failed to give notice of his suspension to his clients, prompting the Florida Bar to file a contempt petition. *See Florida Bar v. Rosenberg*, No. SC15-2237, 2016 WL 1566420, at *1 (Fla. Apr. 15, 2016)*; Matter of Rosenberg*, 202 A.D.3d 1271, 1272 (2022) (summarizing the Florida disbarment proceedings). The Florida Supreme Court issued an order to show cause in connection with the Florida Bar's petition, but Rosenberg failed to respond to the court's order. *Rosenberg,* 2016 WL 1566420, at *1; Compl. ¶ 4 (admitting that Rosenberg did not respond in this matter). On April 15, 2016, the Florida Supreme Court concluded that Rosenberg was in contempt of the court's order and entered an order disbarring Rosenberg in Florida. *Rosenberg,* 2016 WL 1566420, at *1; Compl. ¶ 4.

Despite the disbarment order, Rosenberg continued to represent clients and to hold himself out as an attorney in good standing in Florida, prompting the Florida Bar to file another contempt petition. *Rosenberg*, 202 A.D.3d at 1272. The Florida Supreme Court issued another order to show cause in connection with the Florida Bar's petition, and Rosenberg again failed to respond to the court's order, prompting the Florida Supreme Court to order Rosenberg's permanent disbarment on September 25, 2017. *Id.*; *Fla. Bar v. Rosenberg*, No. SC17-1108, 2017 WL 4233015, at *1 (Fla. Sept. 25, 2017); Compl. ¶ 4.

Eventually, Rosenberg's discipline in Florida triggered disciplinary proceedings up the eastern seaboard. At the time Rosenberg was disbarred in Florida, he was also licensed to practice law in Massachusetts, but Rosenberg did not notify the Massachusetts Board of Bar Overseers of his Florida disbarment until January 2021, thereby violating a Massachusetts bar rule. *Matter of Rosenberg*, 491 Mass. 1027, 1030 (2023). Thereafter, Massachusetts bar counsel filed in county court a petition for the imposition of reciprocal discipline and, on December 15,

2021, a single justice of the Massachusetts Supreme Judicial Court entered a reciprocal order disbarring Rosenberg in Massachusetts.  *Id.* at 1028; Compl. ¶ 11.  On February 23, 2023, the judgment of the Massachusetts Supreme Judicial Court disbarring Rosenberg was affirmed on appeal.  Compl. ¶ 11; *see also Rosenberg*, 491 Mass. at 1030.

Rosenberg was also licensed to practice law in New York.  Following his Florida disbarment, the Attorney Grievance Committee for the Third Judicial Department of the Appellate Division of the Supreme Court of the State of New York (the "Third Judicial Department") also filed a motion for reciprocal discipline.  *See* Compl. ¶ 11; *Rosenberg*, 202 A.D. 3d at 1272.  Like in Massachusetts, Rosenberg also failed to timely notify New York bar authorities of the imposition of discipline in Florida, prompting the grievance committee to seek reciprocal discipline in New York.  *See Rosenberg*, 202 A.D.3d at 1272–73.  Rosenberg submitted papers in opposition to the Attorney Grievance Committee's motion.  *Id.* at 1273.  On February 10, 2022, the Third Judicial Department granted the Attorney Grievance Committee's motion and entered an order disbarring Rosenberg in New York.  Compl. ¶ 11; *see also Rosenberg,* 202 A.D.3d at 1272.  On August 25, 2022, the Third Judicial Department denied Rosenberg's motion for reconsideration of the New York disbarment order.  *See* ECF No. 62-2. On June 13, 2023, the New York Court of Appeals denied his appeal "upon the ground that no substantial constitutional question is directly involved."  *Matter of Rosenberg*, 39 N.Y.3d 1177 (2023).  On November 2, 2023, the Third Judicial Department denied Rosenberg's motion to vacate his disbarment in New York in part because Rosenberg "demonstrated nothing to substantiate his claim that his disbarment constitutes a constitutional violation."  *See* Compl. ¶ 11; *Matter of Rosenberg,* 221 A.D.3d 1131, 1134 (2023).

### c. Rosenberg's Allegations

Rosenberg brings forth procedural due process claims under 42 U.S.C. § 1983, challenging the constitutionality of due process in the states where he was disbarred.  *See* Compl. ¶¶ 17–27.  Although it is not explicitly specified in the Complaint, the Court construes Rosenberg's alleged deprivation as the loss of his law license.  Rosenberg does not seek reinstatement outright; rather, he seeks unspecified injunctive relief and declaratory relief on account of inadequate process in Florida, Massachusetts, and New York.

Specifically as to Defendant Avery, Rosenberg appears to challenge the constitutionality of a Florida rule that allows a judge to both order an attorney to show cause as to why they should not be sanctioned for bad faith conduct and that also allows the same judge to determine whether the lawyer should be sanctioned.  *See id.* ¶ 16.  Concerning his initial sanctions proceedings, Rosenberg suggests that the trial judge should have recused himself.  *See* Compl. ¶ 1.  Moreover, Rosenberg complains that the fact that the "Chief Judge of the Supreme Court of Florida [serves] as administrator of The Florida Bar leads to ex parte communications between the Chief Judge and The Florida Bar at least as to disciplinary cases in general, and this ex parte communication causes there to be a favoritism [sic] towards the views expressed by The Florida Bar."  *See id.*  Finally, Rosenberg also alleges that "Forida [sic] engaged in a continuing tort against Rosenberg which began with judge Gerber infringing Rosenberg's First Amendment right to free speech, petition and assebly [sic] and continuing with the suspension, disbarment, permanent disbarment and prefiling restriction."  *Id.* ¶ 10.

As to all Defendants, Rosenberg alleges that each state bar authority "gives a false impression to the judges about Rosenberg's compliance with regard to the Bar rules because [each pertinent authority] presents its position as if it were the view of an independent prosecutor when in reality it is the view of competitors which have a motivation to remove Rosenberg from

the legal services market."  *Id.* ¶¶ 16, 22, 26.  Rosenberg complains that this leads to a "lack of [a] determination by a neutral judge [as to] whether rules' standards are met and/or whether suspension, disbarment and/or prefiling restrictions are proper against a lawyer accused of a bar rule violation and/or whether a [sanction] should be removed[,]" thereby violating Rosenberg's due process rights.  *See id.*

## II.    Procedural History[1]

On January 2, 2025, Rosenberg filed his Complaint.  ECF No. 1.  On January 13, 2025, Rosenberg requested summonses as to all Defendants, and on January 27, 2025, the Clerk of Court issued summonses to Rosenberg.  ECF Nos. 4–6, 9.  On February 3, 2025, Defendant Avery was served.  ECF No. 11.  On February 24, 2025, Defendants Creaser and Anderson were served.  ECF Nos. 16, 28.

On February 24, 2025, Defendant Avery filed a motion to dismiss the Complaint without requesting a premotion conference as required by the Court's Individual Rules.  *See* ECF No. 13; *see also* Indiv. R. 2.A.  On March 3, 2025, Rosenberg filed a motion for entry of default as to Defendant Avery.  ECF No. 15.  On March 10, 2025, Defendant Avery responded to Rosenberg's motion and, that same day, Rosenberg filed an opposition to Defendant Avery's response, arguing that because Defendant Avery's counsel had not yet been admitted *pro hac vice*, the Court should therefore dismiss Defendant Avery's response to his motion for default. ECF Nos. 21, 23.

---

[1] Rosenberg also opposed two *pro hac vice* motions filed by Defendants' counsel and sought a temporary restraining order to enjoin Defendant Avery's counsel from representing Defendant Avery pending a decision on his *pro hac vice* motion (ECF Nos. 14, 18, 32); filed motions to disqualify Defendants' counsel (ECF Nos. 27, 52–56); and filed motions for sanctions against Defendant Avery's counsel (ECF Nos. 20, 22).  The Court granted the *pro hac vice* motions challenged by Rosenberg (ECF Nos. 33, 50); denied Rosenberg's request for a temporary restraining order enjoining Defendant Avery's counsel from representing her (ECF No. 34); and Rosenberg later withdrew his motions to disqualify counsel (ECF No. 75) and his sanctions motions (ECF No. 51).  As these issues are now moot, the Court omits a fulsome discussion of these issues and instead directs the public to the court's docket.

On March 17, 2025, Defendant Creaser filed a letter requesting a premotion conference ahead of Defendant Creaser's anticipated motion to dismiss the Complaint. ECF No. 26. On March 19, 2025, Rosenberg filed his opposition to Defendant Creaser's letter. ECF No. 31.

On March 18, 2025, Rosenberg filed a motion for entry of default as to Defendant Anderson. ECF No. 29. On March 21, 2025, counsel for Defendant Anderson appeared in this case and, that same day, filed a letter requesting a premotion conference ahead of Defendant Anderson's anticipated motion to dismiss the Complaint. ECF Nos. 35, 36. That same day, Rosenberg filed his opposition to Defendant Anderson's letter. ECF No. 38. On April 2, 2025, Rosenberg filed renewed motions for default judgment as to Defendants Avery and Anderson and filed amended motions of the same on April 4, 2025. ECF Nos. 46–49.

On April 7, 2025, the Court held a conference in which it set forth briefing schedules for Rosenberg's default motions against Defendants Avery and Anderson and for the Defendants' motions to dismiss Rosenberg's Complaint. *See* ECF No. 51. On April 28, 2025, Defendants filed their motions to dismiss the Complaint and supporting memoranda and declarations. ECF Nos. 57–59, 61–65. On April 28 and 29, 2025, Rosenberg filed his oppositions to the motions to dismiss. ECF Nos. 60, 66–67. On May 12, 2025, Defendants Avery and Anderson filed their oppositions to Rosenberg's motion for default judgment. ECF Nos. 70, 73. On May 13, 2025, Rosenberg filed his replies in connection with the default motion. ECF Nos. 76–77. On May 19, 2025, Defendants Avery and Creaser filed their replies to Rosenberg's opposition to their motions to dismiss the Complaint. ECF No. 78, 81.

On May 8, 2025, Rosenberg filed a motion for a preliminary injunction against all Defendants, seeking the *de facto* temporary reinstatement of Rosenberg in Florida, Massachusetts, and New York pending the proceedings in this case. ECF No. 69. On May 19,

2025, Rosenberg filed an amended motion for preliminary injunction.  ECF No. 79.  On May 22,

2025, the Court ordered Defendants to show cause why a preliminary injunction should not

issue.  ECF No. 86.  On June 4 and 5, 2025, Defendants filed their responses.  ECF Nos. 88–90.

On June 6, 2025, Rosenberg filed a reply.  ECF No. 92.

On July 20, 2025, Rosenberg filed a letter request for a conference in connection with a

contemplated motion to amend the Complaint.  ECF No. 118.  On July 29, 2025, Rosenberg filed

a notice indicating that Defendants did not consent to his amending the Complaint.  ECF No.

121.  On August 6, 2025, and without leave of Court, Rosenberg filed a motion to amend the

Complaint.  ECF No. 125.  On August 12, 2025, Defendant Creaser filed his opposition.  ECF

No. 126.  On August 21, 2025, Rosenberg filed his reply.  ECF No. 127.  On September 26,

2025, Rosenberg filed an amended motion to amend the Complaint.  ECF No. 130.

Additionally—as of the entry of this order and opinion—Rosenberg had filed thirty-three

notices of supplemental authority or notices of records in related proceedings, many of which

contain argument or commentary.  *See* ECF Nos. 68, 80, 82–85, 87, 91, 93–106, 110–11, 113,

115–17, 122–24, 128–29.  Defendants Creaser and Avery filed letters opposing Rosenberg's

notices generally.  ECF Nos. 112, 114.

## LEGAL STANDARD

### I.     Motion for Default Judgment

The Court may grant a default judgment in favor of a plaintiff when a defendant has

failed to plead or otherwise defend an action.  *See* Fed. R. Civ. P. 55(a).  "The dispositions of

motions for entries of defaults and default judgments . . . are left to the sound discretion of a

district court because it is in the best position to assess the individual circumstances of a given

case and to evaluate the credibility and good faith of the parties."  *Enron Oil Corp. v. Diakuhara*,

10 F.3d 90, 95 (2d Cir. 1993).  The Second Circuit has emphasized its "preference for resolving

disputes on the merits," and "when doubt exists as to whether default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Id.* at 95–96.

## II.    Motion to Dismiss for Lack of Personal Jurisdiction

"[T]he plaintiff bears the burden of establishing personal jurisdiction over the defendant." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (internal quotation marks and citations omitted). "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's prima facie showing may be established solely by allegations." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (internal quotation marks and citations omitted). "This showing may be made through the plaintiff's own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *S. New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (internal quotation marks and citations omitted). The Court "construe[s] the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." *Dorchester*, 722 F.3d at 85 (internal quotation marks and citations omitted).

However, the Court "will not draw argumentative inferences in the plaintiff's favor," nor must it "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotation marks and citations omitted).

## III.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

When presented with motions to dismiss on both 12(b)(1) and 12(b)(6) grounds, a court must first decide the 12(b)(1) motion because defenses and objections are moot if the court does not have subject matter jurisdiction over the complaint. *See Rhulen Agency, Inc. v. Alabama Ins.*

*Guar. Ass'n*, 896 F.2d 674, 675 (2d Cir. 1990).  A case may be dismissed for lack of subject

matter jurisdiction under Rule 12(b)(1) "when the district court lacks the statutory or

constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.

2000).  A court may refer to evidence outside the pleadings in resolving a motion to dismiss for

lack of subject matter jurisdiction.  *Id.*  "A plaintiff asserting subject matter jurisdiction has the

burden of proving by a preponderance of the evidence that it exists."  *Id.*

### IV.    Motion to Dismiss for Failure to State a Claim

When resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a

court should "draw all reasonable inferences in Plaintiffs' favor, assume all well-pleaded factual

allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."

*Faber v. Metro. Life Ins. Co*., 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and

citations omitted).  Thus, "[t]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)).  The court need not credit "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 678.  However,

the Court's function on a motion to dismiss is "not to weigh the evidence that might be presented

at a trial but merely to determine whether the complaint itself is legally sufficient."  *Goldman v.

Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

Ordinarily, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint,

however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted

by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted) (internal quotations

omitted).  But when *pro se* litigants are attorneys, they are "not entitled to liberal construction of

[their] pleadings." *See Weissbrod v. Gonzalez*, 576 F. App'x 18, 19 (2d Cir. 2014) (citing *Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010)).

V.     **Motion for Preliminary Injunction**

A preliminary injunction is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018). A showing of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009).

**DISCUSSION**

The Court begins by summarizing the various pending motions in this action. Rosenberg brings motions for default judgment as to Defendants Anderson and Avery for their failure to appear in this case. Defendants bring motions to dismiss Rosenberg's Complaint, all of which rely on slightly different tacks. Defendant Avery asserts that the Court lacks personal jurisdiction over her, as well as subject matter jurisdiction over the case, and, further, that Rosenberg fails to make a claim upon which relief can be granted. Defendant Anderson seeks dismissal primarily on the basis that the Court does not have personal jurisdiction over her and also joins in Defendant Avery's arguments regarding subject matter jurisdiction and the sufficiency of Rosenberg's claims. Defendant Creaser asserts various threshold challenges to the Court's ability to hear a case against him and also argues that Rosenberg fails to state a claim

upon which relief can be brought.  Finally, Rosenberg brings a motion for a preliminary injunction seeking his reinstatement to the practice of law.

At the outset, the sheer numerosity and downstream effects of the pending motions require the Court to establish an appropriate order of operation.  Indeed, how could the Court reach the question of whether Defendants Avery and Anderson are in default if the Court lacks personal jurisdiction over these Defendants in the first place?  Or, if the Court dismisses any of Rosenberg's claims, how could Rosenberg show any likelihood of success on those claims such that any preliminary injunctive relief could be warranted?

Thus, for the Court to correctly and efficiently decide on the pending motions, it must rule on them as follows.  First, the Court considers whether it has personal jurisdiction over Defendants Avery and Anderson.  Concluding that it does not, the issue of whether Defendants Avery and Anderson defaulted in this action becomes moot.  As to Rosenberg's remaining claim against Defendant Creaser, the Court then considers whether the claim overcomes various threshold hurdles.  The Court concludes that the claim does so in part and, additionally, that Rosenberg articulates a plausible claim sufficient to survive a motion to dismiss.  However, upon a conclusion that Rosenberg does not face imminent harm, the Court denies his motion for a preliminary injunction.  Finally, the Court grants Rosenberg leave to file an Amended Complaint consistent with its determinations in this opinion.

## I.    The Court Lacks Personal Jurisdiction Over Defendants Avery and Anderson and Cannot Enter Default Judgment Against Them

Before the Court considers Rosenberg's motions for default judgment, it "may first assure itself that it has personal jurisdiction over the defendant[s]."  *See City of New York v. Mickalis Pawn Shop*, LLC, 645 F.3d 114, 133 (2d Cir. 2011) (cleaned up).  Indeed, "[p]ersonal jurisdiction is 'a necessary prerequisite to entry of a default judgment.'"  *See Burns v. Scott*, 635

F. Supp. 3d 258, 273 (S.D.N.Y. 2022) (citing *Reilly v. Plot Commerce*, No. 15-cv-05118, 2016 WL 6837895, at *2 (S.D.N.Y. Oct. 31, 2016), *adopted by*, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016)).  The Court thus first considers the personal jurisdictional challenges brought by Defendants Avery and Anderson, two foreign defendants.  Rosenberg does not claim that Defendants Avery and Anderson have such continuous or systematic contacts with New York such that they are essentially "at home" in the state, so the Court need not engage in general jurisdictional analysis.  Instead, it considers whether it has specific personal jurisdiction over them.

A New York court may exercise personal jurisdiction over an out-of-state defendant if "New York law would confer upon its courts the jurisdiction to reach the defendant" and, so finding, if "extension of jurisdiction in such a case would be permissible under the Due Process Clause of the Fourteenth Amendment." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2003).  To establish specific personal jurisdiction over a foreign defendant under New York law, a plaintiff must show that the defendant "committed acts within the scope of New York's long-arm statute, [N.Y. C.P.L.R.] § 302." *Schultz v. Safra Nat. Bank of New York*, 377 F. App'x. 101, 102 (2d Cir. 2010).

Under New York's long-arm statute, courts may exercise specific personal jurisdiction over a nondomiciliary if a party (1) transacts business in New York, (2) commits a tortious act (except defamation) in New York, (3) commits a tortious act (except defamation) outside of New York that causes injury within New York, or (4) owns, uses, or possesses real property in New York.  *See* N.Y. C.P.L.R. § 302(a)).  A cause of action against that party must "aris[e] from" the aforementioned acts.  *See id.*

Here, Rosenberg has not alleged that Defendants Avery and Anderson committed a tortious act within New York or that they own, use, or possess real property in New York.  Thus, the claim that the contacts from Florida and Massachusetts "pushed" New York to discipline Rosenberg is best suited for analysis under N.Y. C.P.L.R. §302(a)(1) as transacting business in New York or under § 302(a)(3) as a tortious act committed outside of New York that causes injury within New York.  As the Court explains below, Rosenberg has not made a case under either basis.

### a. Rosenberg Fails to Allege Personal Jurisdiction Under N.Y. C.P.L.R. § 302(a)(1)

To determine jurisdiction under § 302(a)(1), a court must decide (1) whether the defendant "transacts any business" in New York and, if so, (2) whether this cause of action "aris[es] from" such a business transaction.  *American Girl, LLC v. Zembrka*, 118 F.4th 271, 277 (2d Cir. 2024), *cert. denied*, No. 24-653, 2025 WL 247472 (Jan. 21, 2025); *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007); *see Deutsche Bank Sec., Inc. v. Montana Bd. of Investments*, 7 N.Y.3d 65, 71 (N.Y. 2006).

"Transacting business under § 302(a)(1) means 'purposeful activity—some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  *Am. Girl, LLC*, 118 F.4th at 277. (quoting *Spetner v. Palestine Inv. Bank*, 70 F.4th 632, 639 (2d Cir. 2023) (cleaned up)).  "[T]he overriding criterion necessary to establish a transaction of business within the meaning of [N.Y. C.P.L.R. §] 302(a)(1)" is that "a non-domiciliary must commit an act by which it purposefully avails itself of the privilege of conducting activities within New York."  *Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 377 (2014) (cleaned up).  Moreover, "it is not the quantity but the quality of the contacts that matters under our long-arm jurisdiction analysis."  *Id.* at 371.

Courts frequently consider whether defendants' contacts with New York constitute transacting business, weighing "the totality of the defendant's activities within the forum[.]" *See Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortgage Investors*, 510 F.2d 870, 873 (2d Cir. 1975). The jurisprudence is replete with examples of the extent to which a defendant's contacts directed to New York—including their in-person presence, phone calls, e-mails, contracts, or solicitations (among other things)—can amount to a transaction under N.Y. C.P.L.R. § 302(a)(1). *See Best Van Lines*, 490 F.3d 239, 246–48 (collecting cases). Indeed, "proof of one transaction," or a "single act," "in New York is sufficient to invoke [long-arm] jurisdiction, even though the defendant never enters New York[.]" *Deutsche Bank*, 7 N.Y.3d at 71 (internal quotation marks omitted).

Rosenberg alleges that "Florida's and Massachusetts' contacts with New York, each pushing Rosenberg to stop practicing in New York as a result of its disciplinary order(s) against Rosenberg, make each, Florida and Massachusetts, have sufficient purposeful contacts with New York to give this Court personal jurisdiction over Ms. Avery in her official capacity and Ms. Anderson in her official capacity." Compl. ¶ 12. He adds that "[s]ince the New York reciprocal discipline is related to the Florida and Massachusetts discipline . . . this Court has personal jurisdiction. But-for the Florida discipline, Erwin Rosenberg would not have been disciplined in Massachusetts nor New York." ECF No. 66 at 4.

But to determine whether personal jurisdiction exists in this case, the key question is not whether the claims in Florida and Massachusetts are *related* to those in New York or whether the Attorney Grievance Committee for the Third Judicial Department considered the discipline from the other states. The question is much more specific: has Rosenberg shown that Defendants

Avery and Anderson (or the bar authorities with which they are associated) engaged in *any* single act amounting to a business transaction in New York?

Rosenberg makes no allegations that Defendants Avery and Anderson (or anyone from their respective bar authorities) ever appeared before, called, e-mailed, petitioned, or filed a complaint with the Attorney Grievance Committee of the Third Judicial Department. Despite the Court's substantial recitation of the facts alleged in Rosenberg's Complaint (as well as those gleaned from the numerous underlying judicial proceedings in this case), the Court cannot identify any facts from which it could infer that Defendants Avery and Anderson directed any activities toward New York or purposefully availed themselves of the privilege of conducting any activities in New York. Thus, Rosenberg's allegations as to this Court's jurisdiction over Defendants Avery and Anderson appear to be mere legal conclusions.

Even if the Court accepts as true the notion that Rosenberg would not have received reciprocal discipline in New York but for the Florida discipline, the Court still cannot draw an inference that Defendants Avery and Anderson engaged in conduct that was anything but incidental. Indeed, the Court has identified another case in this circuit that considered a similar question: *Grundstein v. Eide* involved a plaintiff residing in Vermont who was licensed to practice law in Washington State until he was disbarred, leading the plaintiff to sue Washington State bar officials in Vermont federal court. No. 13-cv-300, 2014 WL 11462807, at *1 (D. Vt. May 15, 2014). The plaintiff claimed that his Washington discipline caused him reputational harm in Vermont and prevented him from sitting for the Vermont bar exam. *Id.* at *4.

In its jurisdictional analysis, the court concluded that it lacked personal jurisdiction over the Washington State bar officials, in part because "[t]he Washington disciplinary proceeding concerned Mr. Grundstein's Washington bar license, and the primary impact of the proceeding

was to rescind Mr. Grundstein's ability to practice law in the State of Washington.  Defendants did not initiate the disciplinary proceeding to prevent him from sitting for the Vermont bar exam or to prevent him from practicing law in Vermont." *Id.*  So too here:  to the extent Defendants Anderson and Avery had contacts with New York, there is nothing in the record that suggests such contacts were not merely incidental to the disciplinary proceedings in Florida and Massachusetts.

The *Grundstein* court relied on an out-of-circuit case that is even more illustrative.  In *United States v. Ferrara*, a District of Columbia federal court found that it lacked personal jurisdiction over claims against the New Mexico chief disciplinary counsel where the plaintiff's subsequent inability to practice law in the District of Columbia was "incidental, not deliberate" to his prior discipline in New Mexico.  847 F. Supp. 964, 967–68 (D.D.C. 1993).  Like in the instant case, the plaintiff in *Ferrara* failed to demonstrate that the "defendant has purposefully directed her conduct at this jurisdiction[.]"  *Id.* at 967.  And like the court in *Ferrara*, the Court cannot identify enough contacts by Defendants Anderson and Avery such that it could exercise personal jurisdiction over them on this basis.  *Id.* at 970.  Moreover, the Court notes *Ferrara*'s caution that to hold otherwise "would endorse an interpretation of personal jurisdiction under which defendant—and, for that matter, any state seeking to enforce its disciplinary rules against members of its bar—could potentially be subject to suit in any other state where its licensed attorneys chose to practice[.]"  *Id.* at 968.

In fact, to the extent Rosenberg alleges that Florida's purported "push" is actually the Florida Bar Rule that required Rosenberg to notify the New York bar authorities of his Florida discipline, the Court can infer much more readily that it was Rosenberg who made any purposeful contact with New York.  Such "unilateral activity of those who claim some

19

relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *see also Williams v. Beemiller, Inc.*, 33 N.Y.3d 523, 529 (2019) ("[T]he relationship between defendant and the forum state must arise out of defendant's own contacts with the forum and not 'contacts between the plaintiff (or third parties) and the forum State[.]'") (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)).

### b.  Rosenberg Fails to Allege Personal Jurisdiction Under N.Y. C.P.L.R. § 302(a)(3)

Turning to the other possible basis for personal jurisdiction—that Defendants Avery and Anderson committed a tortious act outside of New York that causes injury within New York—Rosenberg must also have alleged that Defendants Avery and Anderson:

> (i)     regularly do[] or solicit[] business, or engage[] in any other persistent course of conduct, or derive[] substantial revenue from goods used or consumed or services rendered, in the state, or
>
> (ii)    expect[] or should reasonably expect the act to have consequences in the state and derive[] substantial revenue from interstate or international commerce

*See* N.Y. C.P.L.R. § 302(a)(3).  The standard here is even more stringent than that under N.Y. C.P.L.R. 302(a)(1), and although Rosenberg alleges that the contacts from Florida and Massachusetts are "related" and "purposeful," these allegations are conclusory and do not satisfy the additional requirements under N.Y. C.P.L.R. § 302(a)(3)(i) or (ii).  First, Rosenberg has not demonstrated that Defendants Avery and Anderson "regularly solicit business in New York or engage in any persistent course of conduct within New York."  *Girl Scouts of U.S. v. Steir*, 102 F. App'x 217, 220 (2d Cir. 2004).  Second, he makes no allegations as to any revenue—much less any substantial revenue—derived by Defendants Avery and Anderson by their allegedly tortious acts causing injury in New York.  *Id.* at 221.

Rosenberg's own pleadings and supporting materials lack "an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant."  *See S. New Eng. Tel. Co.*,

624 F.3d 123 at 138.  Accordingly, Rosenberg has failed to make a prima facie showing of personal jurisdiction over Defendants Avery and Anderson.  Therefore, Defendants Avery and Anderson's motions to dismiss under Rule 12(b)(2) are granted, and the Court need not reach their other bases for dismissal.

Moreover, where a Court has no personal jurisdiction over a defendant, it follows that the Court cannot enter a default judgment against them.  Therefore, Rosenberg's motions for default judgment against Defendants Avery and Anderson are denied as moot.

## II.    The Court Lacks Subject Matter Jurisdiction Over Most of Rosenberg's Claims as to Defendant Creaser

All that remains is Rosenberg's due process claim against Defendant Creaser, who initiated the New York disciplinary proceeding against Rosenberg and who served as counsel to the Chief of the Attorney Grievance Committee in the action.  *See Rosenberg*, 202 AD 3d at 1271; ECF No. 63 at 3 ("Creaser as counsel to AGC Chief Attorney Monica Duffy, initiated the disciplinary proceeding in 2021.").  As the Court indicated earlier, Rosenberg's reciprocal discipline in New York began with the Attorney Grievance Committee's motion for reciprocal discipline filed with the Third Judicial Department.  *See* Compl. ¶ 11; *Rosenberg*, 202 AD 3d at 1272.  To the extent Rosenberg's alleged deprivation is, in fact, the loss of his law license, the Court understands from the underlying proceedings that the disbarment was the direct result of the Third Judicial Department's order following the reciprocal discipline proceedings.  *See Rosenberg*, 202 AD 3d at 1273–74 ("Accordingly, we conclude that respondent's misconduct is deemed established on this record.  As for the appropriate sanction, given, among other things, respondent's contemptuous defiance of court orders, refusal to acknowledge the impropriety of his actions and his lack of remorse, we find no basis to deviate from the severity of the Florida disciplinary orders. . . .  Therefore, upon consideration of all the facts and circumstances

presented, we conclude that, in order to protect the public, maintain the honor and integrity of the profession and deter others from committing similar misconduct . . . , respondent should be disbarred in [New York].") (internal citations omitted).

Rosenberg brings a due process claim under 42 U.S.C. § 1983 against Defendant Creaser, specifically alleging that:

> The New York Attorney Grievance Committee for the Third Judicial Department is run by market participants who are competitors of Rosenberg. The Attorney Grievance Committee for the Third Judicial Department gives a false impression to the judges about Rosenberg's compliance with regard to the Bar rules because the Attorney Grievance Committee for the Third Judicial Department presents its position as if it were the view of an independent prosecutor when in reality it is the view of competitors which have a motivation to remove Rosenberg from the market. Therefore there is [a] lack of determination by a neutral judge whether rules' standards are met and/or whether suspension, disbarment and/or prefiling restrictions are proper against a lawyer accused of a bar rule violation and/or whether a sanctio [sic] should be removed.

Compl. ¶ 26. Elsewhere in the Complaint, Rosenberg expressly alleges that he "does not challenge the adverse state-court [disbarment] decisions themselves, but rather targets as unconstitutional the laws they authoritatively construed." *Id.* ¶ 15.

Rosenberg does not identify any particular law authoritatively construed by the Attorney Grievance Committee or by the Third Judicial Department. Rather, the Court infers that Rosenberg finds a violation of due process where the Attorney Grievance Committee purportedly gives false impressions to judges because the committee members have a motivation to remove Rosenberg from the legal services market. *See id.* ¶ 26. Rosenberg adds that this results in a "lack of a determination by a neutral judge" as to whether Rosenberg complied with the bar rules. *See id.* In the Complaint, Rosenberg appears to also summarily reallege as to Defendant Creaser the claims concerning (1) the constitutionality of Florida's rule allowing judges to both impose sanctions and also determine whether a lawyer violated their order; and (2) the impropriety of purported *ex parte* communications between the Florida Bar and the Chief Judge

of the Supreme Court of Florida.[2]  *See* Compl. ¶ 20.  However, the Court concludes that these allegations do not implicate the due process claim related to Rosenberg's purportedly procedurally unfair New York disbarment proceedings and are thus untethered to Defendant Creaser.

Moreover, Rosenberg does not specify what declaratory and injunctive relief he seeks, but the Court infers from Rosenberg's submissions that he seeks:  (1) declaratory relief in the form of an order concluding that New York's lawyer discipline procedures violate due process[3] and (2) injunctive relief in the form of reinstatement to the New York bar.  *See id.* ¶ 13.  ("[I]f a federal court concludes that Florida's and Massachusetts' lawyer discipline procedures violate due process, that court order would eliminate the state prosecutor's justification for denying Rosenberg immediate reinstatement."); ECF No. 79 ¶ 1 (seeking an injunction that effectively reinstates Rosenberg to the practice of law).

Defendant Creaser raises several challenges to Rosenberg's claim, including that the Court lacks subject-matter jurisdiction pursuant to the *Rooker-Feldman* doctrine, that the Eleventh Amendment bars the claim; that Defendant Creaser enjoys quasi-judicial immunity; that the claim is precluded by res judicata, and that, in any event, Rosenberg fails to state a claim

---

[2] To the extent Rosenberg argues that any purportedly unconstitutional Florida statutes and procedures governed the outcomes in the New York state court proceedings that caused his injury in New York, the Court declines to accept such a premise based upon the pleadings and the proceedings referenced therein.  As evidenced by the Third Judicial Department's disbarment order, reciprocal discipline in New York is governed and construed by New York law. *See Matter of Rosenberg*, 202 A.D.3d at 1272–74; *see also* N.Y. Comp. Codes R. & Regs. tit. 22, § 806.13 (governing the process by which the Attorney Grievance Committee may bring applications to impose discipline for misconduct in a foreign jurisdiction); N.Y. Comp. Codes R. & Regs. tit. 22, § 1240.13 (governing the process by which New York state courts adjudicate reciprocal discipline).

[3] The Court makes this inference in light of the structure of the Complaint generally.  Indeed, as the Court explains below, the Complaint appears structured to overcome a possible *Rooker-Feldman* challenge because it focuses on the purportedly inadequate due process afforded to Rosenberg's disbarment proceedings in New York and explicitly disclaims a challenge to the state court judgments rendering the disbarments.

upon which relief may be granted.  As the Court explains below, Rosenberg almost clears all of the threshold challenges unscathed, and his claim partly survives Defendant Creaser's motion.

### a. *Rooker-Feldman Is Inapplicable to this Case*

The Court must consider whether it has jurisdiction over a case that implicates a state-court judgment.  On this point, much is made in the papers about a recent Supreme Court case, *Reed v. Goertz*, 598 U.S. 230 (2023).  In *Reed*, the Supreme Court grappled with the petitioner's due process challenges to a post-conviction DNA testing statute in Texas, resulting in a 6-3 decision in favor of the petitioner.  *Id.* at 237.  The majority principally addressed the question of when exactly the statute of limitations begins to run for a 42 U.S.C. § 1983 procedural due process claim following a state proceeding.  However, the majority also briefly considered the threshold question of whether the petitioner's due process claim contravened the *Rooker-Feldman* doctrine—which bars federal district courts from reviewing state court judgments—and concluded that it did not.  *See id.* at 235–36.

Rosenberg relies heavily on *Reed*—indeed, he cited the case in the Complaint and his allegations mirror the majority's language—and construes it as a novel case that helps to overcome Defendant Creaser's *Rooker-Feldman* challenge.  But in the Court's view, the majority merely applied *Rooker-Feldman* to the case without disturbing the doctrine's underpinnings, summarized by the majority as follows:

> Texas contends that Reed's procedural due process claim contravenes the *Rooker-Feldman* doctrine.  *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  That doctrine prohibits federal courts from adjudicating cases brought by state-court losing parties challenging state-court judgments.  But as this Court explained in *Skinner v. Switzer*, even though a "state-court decision is not reviewable by lower federal courts," a "statute or rule governing the decision may be challenged in a federal action."  562 U.S. 521, 532 (2011).  Here, as in *Skinner*, Reed does "not challenge the adverse" state-court decisions themselves, but rather "targets as unconstitutional the Texas statute they authoritatively construed."  *Ibid.*

*Id.* at 234–35 (cleaned up).

The *Rooker-Feldman* doctrine clearly instructs that federal district courts may not sit in review of state court judgments, yet a district court can retain jurisdiction over cases alleging an "independent claim" even if such a claim ultimately challenges or denies some conclusion reached by the state court. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84. (2005). Thus, before the Court is a straightforward question: is Rosenberg challenging the Third Judicial Department's disbarment order—which would be prohibited under *Rooker-Feldman*—or is he challenging the rules and statutes governing the state court's decision?

On the face of the Complaint, it appears that Rosenberg challenges the latter. However, Defendant Creaser characterizes Rosenberg's framing of the Complaint as an artful end-run around *Rooker-Feldman,* which takes shape as an original action in federal district court but, in substance, merely seeks appellate review of the state court judgment disbarring him. *See* ECF No. 63 at 9. Defendant Creaser further contends that any remedy redressing Rosenberg's injury would necessarily require the Court's rejection of the state-court judgment, which contravenes *Rooker-Feldman*. *See id.*

It is true that the Court would lack jurisdiction over this case if Rosenberg sought appellate review of the state court judgment itself. But taking Rosenberg at his word, he does not challenge the underlying disbarment proceedings on the merits. Rather, he challenges the general constitutionality of due process in New York's disciplinary system, one which purportedly allows the Attorney Grievance Committee—which is made up of Rosenberg's competitors who allegedly have a motivation to remove him from the market—to give false

impressions to judges about Rosenberg's compliance with the bar rules.[4]  *See Feldman*, 460 U.S. at 486 ("United States District Courts, therefore, have subject matter jurisdiction over general challenges to state bar rules, promulgated by state courts in non-judicial proceedings, which do not require review of a final state court judgment in a particular case.  They do not have jurisdiction, however, over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional.  Review of those decisions may be had only in [the Supreme] Court.").

Defendant Creaser points to various cases addressing similar fact patterns in which courts found that *Rooker-Feldman* denied them jurisdiction to hear the case.  Notably, Rosenberg did not respond to any of these cases, but upon review, the Court concludes that they are nevertheless inapposite.  In *Brooks-Jones v. Jones*, the plaintiff sued her ex-husband, claiming that (1) she was deprived of due process when a state court allegedly improperly exercised personal jurisdiction over her and (2) she was deprived of property when she lost her child support payments and custody over her son.  No. 94-cv-1993, 916 F. Supp. 280, 282 (S.D.N.Y. 1996).  In the court's view, the controversy would require a "determination of whether jurisdiction was proper in [that] case[,]" a determination it found to be barred by *Rooker-Feldman*.  *See id.*  The federal district court reasoned that the constitutional claims were "'inextricably intertwined' with the state court judgment and proceedings, because they 'can succeed only to the extent that the state court wrongly decided the issues before it.'"  *Id.* (citing *Fariello v. Campbell*, 860 F.Supp. 54, 66 (E.D.N.Y. 1994)) (cleaned up).  In contrast, Rosenberg claims that the New York disciplinary regime is devoid of due process because the Attorney

---

[4] For the avoidance of doubt, the Court clarifies that it reaches no conclusion as to the merits of Rosenberg's claim at this juncture.  As the Court explains further below, it only concludes that Rosenberg's claim is sufficient as a matter of law.

Grievance Committee gives a false impression to the judges about Rosenberg's compliance with the bar rules, which resulted in the case being heard by an impartial judge.

In another case raised by Defendant Creaser, *Kingston v. Deutsch Bank Nat. Tr. Co.*, the plaintiff brought 42 U.S.C. § 1983 claims against defendants (none of whom were government officials) claiming, among other things, that he was not afforded due process in connection with a state court foreclosure judgment.  No. 12-cv-6257, 2013 WL 1821107, at *1 (E.D.N.Y. Apr. 30, 2013).  The plaintiff sought an "order to show cause to dismiss the complaint and cancel[ ] the lis pend[ens] and to discharge the mortgage along with vacating the judgment of foreclosure and sale."  *Id.* at *2.  The plaintiff's federal due process claims were based on theories that he was allegedly improperly served in the foreclosure proceedings and that the foreclosing bank lacked standing.  *Id.* at *4.  The court concluded that *Rooker-Feldman* barred the due process claims because a federal court judgment in plaintiff's favor (which the Court construes as the vacatur of the judgment of foreclosure and sale) would have required an invalidation of a state court judgment.  *Id.*

Applying that same reasoning here, if, assuming *arguendo*, the Court were to grant a favorable judgment to Rosenberg, such relief would not necessarily affect the validity of the state-court decision because Rosenberg would still need to apply for reinstatement to the New York bar.[5]  *See* ECF No. 67 ("Even though neither Mr. Creaser or their employer's [sic] may be able to directly authorize Rosenberg's re-admission to practice in New York, the prosecutor's reduced opposition as a result of a favorable judgment in this case may help to get Rosenberg readmitted in New York.").

---

[5] If the Court were to grant injunctive relief to Rosenberg, then this would be a closer question.  However, as the Court explains further below, it cannot grant injunctive relief because Defendant Creaser enjoys quasi-judicial immunity.

Defendant Creaser also contrasts *Reed* with *Heck v. Humphrey*, 512 U.S. 477 (1994) as "a Supreme Court case applicable to this action[.]"  ECF No. 63 at 11.  Defendant Creaser points to *Heck*'s guidance that where a plaintiff complains of an unlawful trial and criminal conviction in state court, "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence."  *Heck*, 512 U.S. at 487.  But, as in the earlier examples, the Court cannot apply *Heck* to this case because Rosenberg complains of the adequacy of the due process afforded to him in the New York disciplinary proceedings and does not seek the overturning of his disbarment outright.  Moreover, *Heck* is a criminal case which stands for the proposition that a claim brought under 42 U.S.C. § 1983 cannot be used to collaterally attack a criminal conviction.  Thus, *Rooker-Feldman* does not bar the Court from hearing this case.

### b.  Defendant Creaser Lacks Sovereign Immunity

Next, Defendant Creaser argues that he is immune to suit under the Eleventh Amendment.  "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity . . . ."  *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009).  However, an exception to this rule is set forth in *Ex parte Young*:  "a plaintiff may sue a state official acting in his official . . .  for prospective, injunctive relief from violations of federal law."  *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (quoting In re Deposit Ins. Agency, 482 F.3d at 617).  Moreover, *Ex parte Young* requires that the Court "conduct a 'straightforward inquiry into whether [the] complaint alleges an *ongoing* violation of federal law and seeks relief properly characterized as *prospective*."  *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (citing *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)) (emphasis added).

The Court notes that Rosenberg explicitly seeks only declaratory and injunctive relief (and not damages) against Defendant Creaser in the Complaint and that only Defendant Creaser (and not the State of New York or a New York agency) is being sued, so it disregards Defendant Creaser's case law addressing sovereign immunity from damages suits and the broader immunity afforded to states themselves.  Rather, the Court considers Defendant Creaser's stronger argument against the *Ex parte Young* exemption:  that there is no ongoing violation of federal law because Rosenberg's New York disbarment is an injury that occurred only once in the past and that only retrospective relief—reinstatement—exists to recompense Rosenberg.

As to Defendant Creaser, Rosenberg argues that the ongoing violation of federal law is the control over the Attorney Grievance Committee by market participants pretending to be independent prosecutors.  ECF No. 67 at 2.  In arguing that the relief is prospective, Rosenberg mirrors *Reed* and contends that he has properly construed the relief as prospective because "[a] favorable judgment from this Court against Mr. Creaser will eliminate his justification for denying Rosenberg immediate reinstatement."[6]  *Id.* at 3–4.

Defendant Creaser submits that he lacks the power to reinstate Rosenberg and that only the Third Judicial Department can disbar and reinstate disbarred attorneys.  *See* ECF No. 63 at 11; *see also* N.Y. Comp. Codes R. & Regs. tit. 22, § 1240.16 ("Upon motion by a respondent who has been disbarred or suspended, with notice to the Committee and the Lawyers' Fund for Client Protection, and following such other notice and proceedings as the Court may direct, the Court may issue an order reinstating such respondent . . . .").  The Court agrees that Defendant

---

[6] *See Reed*, 598 U.S. at 234 ("Reed sufficiently alleged an injury in fact:  denial of access to the requested evidence. The state prosecutor, who is the named defendant, denied access to the evidence and thereby caused Reed's injury. *And if a federal court concludes that Texas's post-conviction DNA testing procedures violate due process, that court order would eliminate the state prosecutor's justification for denying DNA testing*.  It is 'substantially likely' "that the state prosecutor would abide by such a court order.") (emphasis added).

Creaser cannot reinstate Rosenberg, but Rosenberg argues (again mirroring *Reed*) that "[e]ven though neither Mr. Creaser or their employer's [sic] may be able to directly authorize Rosenberg's re-admission to practice in New York, the prosecutor's reduced opposition as a result of a favorable judgment in this case may help Rosenberg get readmitted in New York." *Id.* at 4.  Once again, assuming *arguendo* that Rosenberg were to succeed in this action, he would have to reapply for reinstatement with a Court order that clarifies his legal rights to due process. As such, the Court concludes that Rosenberg alleges an ongoing violation of federal law and seeks prospective relief.  Thus, his claim is not barred by sovereign immunity.

### c.  Defendant Creaser Has Quasi-Judicial Immunity from Rosenberg's Claim to the Extent Rosenberg Seeks Injunctive Relief, But He Is Not Immune from Rosenberg's Claim to the Extent Rosenberg Seeks Declaratory Relief

Defendant Creaser claims that he also has quasi-judicial immunity from Rosenberg's claim.  "Judges are granted absolute immunity from liability for acts taken pursuant to their judicial power and authority."  *Oliva v. Heller*, 839 F.2d 37, 39 (2d Cir. 1988).  The Second Circuit has ruled that counsel to the New York Attorney Grievance Committees are entitled to quasi-judicial immunity.  *See McKeown v. N.Y. State Comm'n on Judicial Conduct*, 377 F.App'x. 121, 124 (2d Cir. 2010) ("Prosecutors, hearing examiners, and law clerks are eligible for absolute immunity, and those involved in preparing and adjudicating attorney discipline proceedings share analogous roles."); *Napolitano v. Saltzman*, 315 F.App'x. 351, 351 (2d Cir. 2009) (defendant "enjoy[ed] absolute immunity for his actions as counsel to the Grievance Committee, which are 'quasi-public adjudicatory [or] prosecutorial' in nature") (summary order) (quoting *Barbara v. N.Y. Stock Exch., Inc.*, 99 F.3d 49, 58 (2d Cir. 1996)).

In his opposition, Rosenberg specifically addressed only the unavailability of prosecutorial immunity when a plaintiff seeks declaratory and injunctive relief.  Defendant Creaser urges the Court to construe Rosenberg's failure to respond to his judicial immunity

argument as a concession, but the Court cannot do so here, where both Defendant Creaser and

Rosenberg skirt around the doctrine.  Although "[i]t is well settled that 'judges generally have

absolute immunity from suits for *money damages* for their judicial actions[,]" it is also true that

"judges are not absolutely immune from suits for prospective injunctive relief."  *McKeown*, 377

F. App'x at 124 (citing *Mireles v. Waco*, 502 U.S. 9, 10 n. 1 (1991); *Bliven v. Hunt*, 579 F.3d

204, 209 (2d Cir. 2009)) (emphasis added).  The parties also ignore that 42 U.S.C. § 1983

contains limiting language as it relates to judicial immunity, providing that "in any action

brought against a judicial officer for an act or omission taken in such officer's judicial capacity,

injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief

was unavailable."

  Thus, Defendant Creaser and Rosenberg each get it half-right.  The Court concludes that

Defendant Creaser has no quasi-judicial immunity from Rosenberg's claim except to the extent

Rosenberg seeks injunctive relief because Rosenberg has "failed to allege that a declaratory

decree was violated or that declaratory relief was unavailable[.]"  *See Bliven*, 579 F.3d at 208.

Therefore, Rosenberg's claim survives only to the extent it seeks prospective declaratory relief.

*See T.W. v. New York State Bd. of L. Examiners*, 110 F.4th 71, 92 (2d Cir. 2024), *cert. denied*,

145 S. Ct. 2700, 221 L. Ed. 2d 966 (2025) (affirming dismissal of claim for declaratory relief

against the New York Board of Law Examiners where bar applicant plaintiff "[sought] only a

declaration regarding the Board's previous actions, not its future conduct").

### d.  Res Judicata Is Inapplicable to This Case

  Defendant Creaser's last threshold argument is that Rosenberg's claim is precluded by res

judicata.  "[T]he doctrine of res judicata, or claim preclusion, holds that a 'final judgment on the

merits of an action precludes the parties or their privies from relitigating issues that were or

could have been raised in that action.'"  *Monahan v. New York City Dep't of Corr.*, 214 F.3d

275, 284–85 (2d Cir. 2000). *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994). "Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Monahan*, 214 F.3d at 285 (quoting *NLRB v. United Technologies Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983)).

"To determine the effect of a state court judgment, federal courts, including those sitting in diversity, are required to apply the preclusion law of the rendering state." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 87 (2d Cir. 2000). "New York uses the transactional approach to res judicata, meaning parties are prevented from raising in a subsequent proceeding any claim they could have raised in the prior one, where all of the claims arise from the same underlying transaction." *Falardo v. New York City Police Dep't*, No. 07-cv-9347, 566 F. Supp. 2d 283, 285–86 (S.D.N.Y. 2008) (internal quotation omitted).

As the Court has detailed throughout this opinion, Rosenberg's 42 U.S.C. § 1983 claim is based on the Attorney Grievance Committee's conduct leading up to the Third Judicial Department's judgment from the prior action. If the Court were to find that the structure of the New York disciplinary regime violates procedural due process, the Court would not be re-adjudicating Rosenberg's New York disbarment claim. Moreover, it is not clear that Rosenberg could have raised these claims in his disciplinary proceedings before the Third Judicial Department. Therefore, the Court concludes that his current claim against Defendant Creaser as alleged is not barred under res judicata.

### e. Rosenberg States a Claim Against Defendant Creaser

Last, Defendant Creaser challenges the sufficiency of Rosenberg's claim on its face. To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter" to support "a claim

to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.  Here, Defendant Creaser contends

that Rosenberg has not submitted sufficient factual allegations for this claim to survive and raises

several deficiencies, including Rosenberg's failures to:  identify who his alleged competitors are;

plead the extent to which they competed against each other; or allege any other specific

allegations of bias.  *See* ECF No. 63 at 16.  The Court certainly need not credit "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements."  *See*

*Iqbal*, 556 U.S. at 678.  But here, where Rosenberg has alleged a violation of procedural due

process rights in connection with a purportedly biased reciprocal disciplinary action which

Defendant Creaser initiated, the Court concludes that he has adequately stated a claim

### III.    A Preliminary Injunction Shall Not Issue Because The Court Cannot Grant Injunctive Relief

The Court now considers Rosenberg's motion for a preliminary injunction.  Rosenberg

seeks a "prohibitory injunction because he seeks to prohibit a party from disturbing the status

quo, defined as 'the last peaceable uncontested status preceding the present controversy[.]'".

ECF No. 79 at 1 (quoting *Mastrio v. Sebelius*, 768 F.3d 116, 121 (2d Cir. 2014)).  Here,

Rosenberg articulates the "last peaceable" period as the time predating July 24, 2007, the

commencement date of the initial proceedings for a determination as to whether Rosenberg

engaged in bad faith conduct.  *Id.*  In so doing, Rosenberg seeks injunctive relief granting him

reinstatement to all three state bars.

Putting aside the fact that the Court cannot grant injunctive relief in light of Defendant

Creaser's quasi-judicial immunity, it also concludes that Rosenberg has not shown irreparable

harm in the context of the New York disbarment order.  "A showing of irreparable harm is the

single most important prerequisite for the issuance of a preliminary injunction."  *Faiveley*

*Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009).  Underscoring the

inherent nature of a preliminary injunction, "months-long delays in seeking preliminary injunctions have repeatedly been held by courts in the Second Circuit to undercut the sense of urgency accompanying a motion for preliminary relief." *Council for Responsible Nutrition v. James*, No. 24-cv-1881 (ALC), 2024 WL 1700036, at *9 (S.D.N.Y. Apr. 19, 2024) (internal citations omitted). Here, nearly twenty years have passed since Rosenberg was first disciplined in Florida and over two years have passed since the Court of Appeals in New York denied his appeal of his disbarment. The Court agrees with Defendant Creaser that Rosenberg cannot now claim that there is an "urgent need for speedy action to protect [his] rights." *See Sweigert v. Goodman*, No. 18-cv-8653, 2021 WL 2678621, at *4 (S.D.N.Y. June 30, 2021) (citing *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985)).

To the extent Rosenberg argues irreparable harm in his opening brief, he only couches it in a mere invocation of a First Amendment violation. *See* ECF No. 79 at 3–4. Rosenberg argues that the practice of law involves the First Amendment and he seems to tie this claim to a vague allegation in the Complaint that Florida infringed on his First Amendment rights in connection with the proceedings there. *Id.*; Compl. ¶ 10. As the Court lacks any personal jurisdiction over Defendant Avery, any allegations of irreparable harm in connection with her purported conduct are irrelevant to Rosenberg's motion for preliminary injunction.

Finding that Rosenberg has made no showing of irreparable harm, the Court need not engage with the remaining preliminary injunction elements. Therefore, his motion for a preliminary injunction is denied.

## IV.    The Court Grants Rosenberg's Amended Motion to Amend the Complaint

Leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a). Usually, a *pro se* plaintiff is afforded special solicitude, but "a lawyer representing himself

ordinarily receives no such solicitude at all." *Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010); *see also United States v. Pierce*, 649 F. App'x. 117, 117 n.1 (2d Cir. 2016) (summary order) (denying special solicitude to pro se litigant who was a disbarred attorney).  But even when special solicitude is afforded to *pro se* pleadings, leave to amend is not required if it would be futile.  *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011).

Given the early stage of the litigation and upon a conclusion that justice so requires it, the Court grants Rosenberg's amended motion to amend the Complaint.  ECF No. 130.  However, the Court—having reviewed the proposed Amended Complaint—notes that Rosenberg's new allegations as to Defendants Avery and Anderson only deal with their conduct in Florida and Massachusetts, respectively.  Under the same jurisdictional analysis applied in the Court's dismissal of the Complaint as to Defendants Avery and Anderson, the Court concludes that it also would not have personal jurisdiction over Rosenberg's new claims as to these defendants. *See Hunter v. Deutsche Lufthansa AG*, 863 F.Supp.2d 190, 202 (E.D.N.Y. 2012) (where plaintiff moved to amend complaint to add new federal statutory claims, the motion was denied as futile because "the Court [did] not have personal jurisdiction over [the defendant], . . . and so the addition of claims against [that defendant] would likewise be unable to withstand a motion to dismiss for lack of personal jurisdiction").  As a result, the proposed Amended Complaint still appears to be jurisdictionally deficient as to Defendants Avery and Anderson.

To the extent, however, that Rosenberg can file an Amended Complaint that cures all of the deficiencies outlined in this opinion, the Court concludes that he may do so.  The Court advises Rosenberg that any Amended Complaint must only contain allegations that he believes in good faith to comport with the Court's conclusions in this opinion.  In the Court's view, it is in the interest of all parties for this action to proceed efficiently and without any avoidable motion

practice.  Therefore, if he so chooses, Rosenberg may file an Amended Complaint—consistent with the Court's directives in this opinion—in twenty-one (21) days.

### V.    Rosenberg Is Ordered to Cease Filing Notices of Supplemental Authority Unless They Raise Any New and Controlling Issues

The Court is concerned with the burden placed by Rosenberg upon the Court and the Defendants through the filing of unnecessary notices on the Court's docket.  Having reviewed the notices, the Court was not only unconvinced of the applicability of any new case law (to the extent Rosenberg raised any) but it was also troubled by Rosenberg's attempts to interject new argument and commentary outside of the scope of the considerable briefing in this action.  *See Marcelletti, et al. v. Geico Gen. Ins. Co.*, 23-cv-06211, 2025 WL 1811668, at *14 (W.D.N.Y. July 1, 2025) (declining to consider supplemental authority consisting of quotes from earlier case law and additional legal argument).  The Court advises Rosenberg "that notices of supplemental authority should be used sparingly—principally for new controlling authority or decisions that reflect developments in the relevant caselaw—and such notices should not include any substantive commentary."  *See id.*  Rosenberg is ordered to cease filing any unnecessary notices of supplemental authority and, in light of the Court's ultimate dispositions in this case, the Court declines to order Defendants to respond to any of Rosenberg's submitted notices.

**CONCLUSION**

Defendants Avery's and Anderson's motions to dismiss the Complaint are **GRANTED**, Rosenberg's motions for default judgment are **DENIED** as moot, Defendant Creaser's motion to dismiss the Complaint is **GRANTED** to the extent Rosenberg seeks injunctive relief and **DENIED** to the extent Rosenberg seeks prospective declaratory relief, Rosenberg's motion for a preliminary injunction is **DENIED**, and Rosenberg's amended motion to amend the Complaint is **GRANTED**.

As a result of the Court's dispositions in this case, Clerk of Court is respectfully directed to terminate ECF Nos. 15, 23, 29, 46–49, 57–58, 61, 69, 79, 118, 125, and 130.  Additionally, in light of Rosenberg's May 12, 2025 withdrawal of his then-pending disqualification motions, the Clerk of Court is respectfully directed to terminate ECF Nos. 27 and 52–56.

If Rosenberg wishes to file an Amended Complaint—consistent with the Court's directives in this opinion—he must do so within (21) days following the entry of this opinion.  If Rosenberg does not file an Amended Complaint in such time, the Court shall construe the original Complaint—as bridled by this opinion—to serve as the operative Complaint and shall then order Defendant Creaser to file his Answer.

**SO ORDERED.**

Dated:  **October 9, 2025**
       **New York, NY**

_____
    **ANDREW L. CARTER, JR.**
    **United States District Judge**