**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**ERWIN ROSENBERG,**

**Plaintiffs,**

**-against-**

**TONYA LASHUN AVERY, in her official capacity as agent of The Florida Bar, DOROTHY ANDERSON, in her official capacity as agent of the Massachusetts Office of the Bar Counsel, and MICHAEL K. CREASER, in his official capacity as agent of the New York Attorney Grievance Committee for the Third Judicial Department,**

**Defendants.**

**25-cv-222 (ALC)**

**OPINION & ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Erwin Rosenberg, a disbarred attorney appearing *pro se*, brings procedural due process claims under 42 U.S.C. §1983 and other claims against agents of authorities regulating the legal profession in three states: Tonya Lashun Avery (in her official capacity as agent of the Florida Bar); Dorothy Anderson (in her official capacity as agent of the Massachusetts Office of the Bar Counsel); and Michael K. Creaser (in his official capacity as agent of the New York Attorney Grievance Committee for the Third Judicial Department). Rosenberg's claims stem from attorney discipline imposed on him in Florida, which ultimately led to his disbarment in that state. Following the Florida disbarment, Rosenberg continued to practice law and represent clients in Florida. Rosenberg also failed to notify New York and Massachusetts, where he was also licensed, that he had been disbarred in Florida. Eventually, Rosenberg was reciprocally disbarred in Massachusetts and New York. The Second Amended Complaint ("SAC.")

challenges the constitutionality of the process afforded to Rosenberg in all three states and demands prospective declaratory relief and injunctive relief.

Pending before the Court are the Defendants' motions to dismiss Rosenberg's SAC. After careful review, for the reasons set forth below, Defendant Avery's motion is **GRANTED**, Defendant Anderson's motion is **GRANTED**, and Defendant Creaser's motion is **GRANTED**.

## BACKGROUND

### I. Factual Background

For the purposes of resolving a motion to dismiss, the Court is generally limited to reviewing the allegations in the complaint and documents attached to it or incorporated by reference. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-54 (2d Cir. 2002). The Court therefore takes judicial notice of records of the state court proceedings referenced in Rosenberg's SAC. *Toliver v. City of N.Y.*, Nos. 10-cv-3165, 10-cv-6619, 2011 WL 4964919 at *3 (S.D.N.Y. Sept. 15, 2011) (noting that "federal courts are empowered to take judicial notice of state court records and decisions" when considering a motion to dismiss), *report & rec. adopted*, 2011 WL 4964665 (S.D.N.Y. Oct. 28, 2011).

#### a. Rosenberg's Conduct in Florida

Rosenberg was formerly licensed to practice law in Florida, Massachusetts, and New York. *See generally* ECF No. (134) (SAC.). Beginning in March 2006, Rosenberg was hired to represent defendants in an ongoing civil proceeding in Miami-Dade County, Florida. *Id.* ¶ 1; *see also Fla. Bar v. Rosenberg*, 169 So. 3d 1155, 1157 (Fla. 2015). When the defendants hired Rosenberg, the parties were litigating requests by the plaintiffs to compel the production of certain documents. *Rosenberg*, 169 So. 3d at 1156–57. In April 2006, the court ordered Rosenberg's clients (the defendants) to produce certain documents within five days of the entry of the order. SAC. ¶ 1; *Rosenberg*, 169 So. 3d at 1156–57.

In September 2006, the case was transferred to a circuit court in Palm Beach County, Florida, but Rosenberg's clients had not yet complied with the document production ordered by the prior court in April. *Rosenberg*, 169 So. 3d at 1157. Over the course of months, plaintiffs filed various iterations of their motions to compel production—which the new judge granted—as well as motions for sanctions and contempt against the defendants. *Id.* Rosenberg generally either objected to the production requests or maintained that he had complied with them. *See id.* On July 24, 2007, the court granted the plaintiffs' sixth combined motion to compel, for contempt, and sanctions, and the court further ordered that an evidentiary hearing be held on an order to show cause as to why Rosenberg should not be sanctioned for bad faith conduct. *Id.* However, six days later, on July 30, 2007, Rosenberg withdrew as counsel for defendants in the case. *See id.*; SAC. ¶ 1.

On August 7, 2007, the same trial judge entered an order setting a hearing on the show cause order for August 24, 2007. *Rosenberg*, 169 So. 3d at 1157. Rosenberg filed a motion to dismiss the order to show cause, arguing that the court failed to provide sufficient notice or opportunity to be heard, but the court denied Rosenberg's motion. *Id.* at 1157–58. At the August 24 hearing, Rosenberg declined to testify on his behalf, but the plaintiffs called him as an adverse witness, and he testified that "he believed he had complied with the orders to compel production by simply providing the few documents his clients had given him, without reviewing those documents." *Id.* at 1158. On September 14, 2007, the court entered an order finding that Rosenberg acted in bad faith (based in part on a finding that Rosenberg flouted the court's orders) and imposed a sanction of $20,000 in attorney's fees. *Id.*; SAC. ¶ 1. Rosenberg appealed the court's order, and a state appeals court affirmed. SAC. ¶ 2; *see also Rosenberg v. Gaballa*, 1 So. 3d 1149, 1150 (Fla. Dist. Ct. App. 2009).

**b. The State Bar Disciplinary Actions**

The plaintiffs from the civil proceeding were unable to collect the sanction fee from Rosenberg due to his limited economic situation (Rosenberg admits that he did not pay the sanction fee), and they subsequently complained to the Florida Bar. SAC. ¶ 3. In October 2013, the Florida Bar filed a complaint against Rosenberg alleging that he had engaged in misconduct in violation of the Florida Bar Rules based on his conduct in the civil proceeding. SAC. ¶ 3; *see also Rosenberg*, 169 So. 3d at 1156–59. In addition, Rosenberg alleges that "the Florida Bar accused [him] of not cmplying [sic] with a compelled notice of the discipline to third parties which included a requirement to notify 'state, federal, or administrative bars of which respondent is a member.'" SAC. ¶ 4.

A referee was appointed to consider the matter, and, on May 28, 2015, the Florida Supreme Court issued an order in which it recited the referee's findings of fact and recommendations as to Rosenberg's violations of various Florida Bar Rules. *Rosenberg*, 169 So. 3d at 1156. Specifically, the referee recommended that Rosenberg be found in violation of the following Florida Bar Rules:

> 4–1.1 (a lawyer shall provide competent representation to a client); 4–3.4(d) (a lawyer must not in pretrial procedure, make a frivolous discovery request or intentionally fail to comply with a legally proper discovery request by an opposing party); and 4–8.4(d) (a lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice).

*Id.* at 1158. The Florida Supreme Court agreed with all of the referee's findings as to Rosenberg's guilt but disagreed with the referee's recommended sanction (a 90-day suspension from the practice of law) and instead ordered a one-year suspension warranted by Rosenberg's conduct and the aggravating factors found by the referee. *Id.* at 1161–62.

Despite his suspension, Rosenberg continued to practice law and failed to give notice of his suspension to his clients, prompting the Florida Bar to file a contempt petition. *See Florida*

*Bar v. Rosenberg*, No. SC15-2237, 2016 WL 1566420, at *1 (Fla. Apr. 15, 2016)*; Matter of Rosenberg*, 202 A.D.3d 1271, 1272 (2022) (summarizing the Florida disbarment proceedings). The Florida Supreme Court issued an order to show cause in connection with the Florida Bar's petition, but Rosenberg failed to respond to the court's order. *Rosenberg*, 2016 WL 1566420, at *1; SAC. ¶ 4 (admitting that Rosenberg did not respond in this matter). On April 15, 2016, the Florida Supreme Court concluded that Rosenberg was in contempt of the court's order and entered an order disbarring Rosenberg in Florida. *Rosenberg*, 2016 WL 1566420, at *1; SAC. ¶ 4.

Despite the disbarment order, Rosenberg continued to represent clients and to hold himself out as an attorney in good standing in Florida, prompting the Florida Bar to file another contempt petition. *Rosenberg*, 202 A.D.3d at 1272. The Florida Supreme Court issued another order to show cause in connection with the Florida Bar's petition, and Rosenberg again failed to respond to the court's order, prompting the Florida Supreme Court to order Rosenberg's permanent disbarment on September 25, 2017. *Id.*; *Fla. Bar v. Rosenberg*, No. SC17-1108, 2017 WL 4233015, at *1 (Fla. Sept. 25, 2017); SAC. ¶ 4.

Eventually, Rosenberg's discipline in Florida triggered disciplinary proceedings up the eastern seaboard. At the time Rosenberg was disbarred in Florida, he was also licensed to practice law in Massachusetts, but Rosenberg did not notify the Massachusetts Board of Bar Overseers of his Florida disbarment until January 2021, thereby violating a Massachusetts bar rule. *Matter of Rosenberg*, 491 Mass. 1027, 1030 (2023). Thereafter, Massachusetts bar counsel filed in county court a petition for the imposition of reciprocal discipline, and, on December 15, 2021, a single justice of the Massachusetts Supreme Judicial Court entered a reciprocal order disbarring Rosenberg in Massachusetts. *Id.* at 1028; SAC. ¶ 11. On February 23, 2023, the

judgment of the Massachusetts Supreme Judicial Court disbarring Rosenberg was affirmed on appeal. SAC. ¶ 11; *see also Rosenberg*, 491 Mass. at 1030.

Rosenberg was also licensed to practice law in New York. Following his Florida disbarment, the Attorney Grievance Committee for the Third Judicial Department of the Appellate Division of the Supreme Court of the State of New York (the "Third Judicial Department") also filed a motion for reciprocal discipline. *See* SAC. ¶ 11; *Rosenberg*, 202 A.D. 3d at 1272. Like in Massachusetts, Rosenberg also failed to timely notify New York bar authorities of the imposition of discipline in Florida, prompting the grievance committee to seek reciprocal discipline in New York. *See Rosenberg*, 202 A.D.3d at 1272–73. Rosenberg submitted papers in opposition to the Attorney Grievance Committee's motion. *Id.* at 1273. On February 10, 2022, the Third Judicial Department granted the Attorney Grievance Committee's motion and entered an order disbarring Rosenberg in New York. SAC. ¶ 11; *see also Rosenberg*, 202 A.D.3d at 1272. On August 25, 2022, the Third Judicial Department denied Rosenberg's motion for reconsideration of the New York disbarment order. *See* ECF No. 62-2. On June 13, 2023, the New York Court of Appeals denied his appeal "upon the ground that no substantial constitutional question is directly involved." *Matter of Rosenberg*, 39 N.Y.3d 1177 (2023). On November 2, 2023, the Third Judicial Department denied Rosenberg's motion to vacate his disbarment in New York in part because Rosenberg "demonstrated nothing to substantiate his claim that his disbarment constitutes a constitutional violation." *See* SAC. ¶ 11; *Matter of Rosenberg*, 221 A.D.3d 1131, 1134 (2023).

**c. Rosenberg's Allegations**

Rosenberg brings procedural due process claims under 42 U.S.C. § 1983, challenging the constitutionality of due process in the states where he was disbarred. *See* SAC. ¶¶ 17-27. Although it is not explicitly specified in the Second Amended Complaint, the Court construes

Rosenberg's alleged deprivation as the loss of his law license. Rosenberg does not seek reinstatement outright. Instead, he seeks unspecified injunctive relief and declaratory relief on account of inadequate process in Florida; declaratory relief on account of inadequate process in Massachusetts; and declaratory relief on account of inadequate process in New York.

Specifically, as to Defendant Avery, Rosenberg appears to challenge the constitutionality of a Florida rule that allows a judge to both order an attorney to show cause as to why they should not be sanctioned for bad faith conduct and that also allows the same judge to determine whether the lawyer should be sanctioned. *See id.* ¶ 16. Concerning his initial sanctions proceedings, Rosenberg complains that the fact that the "Chief Judge of the Supreme Court of Florida [serves] as administrator of The Florida Bar leads to ex parte communication between the Chief Judge and The Florida Bar at least as to disciplinary cases in general, and that this ex parte communication causes there to be a favoratism [sic] toward the views expressed by The Florida Bar." *See id*. Finally, Rosenberg also alleges that "Forida [sic] engaged in a continuing tort against Rosenberg which began with judge Gerber infringing Rosenberg's First Amendment right to free speech, petition and assebly [sic] and continuing with the suspension, disbarment, permanent disbarment and prefiling restrictions." *Id.* ¶ 10.

As to all Defendants, Rosenberg alleges that each state bar authority "gives a false impression to the judges about Rosenberg's compliance with regard to the Bar rules because [each pertinent authority] presents its position as if it were the view of an independent prosecutor when in reality it is the view of competitors which have a motivation to remove Rosenberg from the legal service market." *Id.* ¶¶ 16, 22, 26. Rosenberg complains that this leads to a "lack of [a] determination by a neutral judge [as to] whether rules' standards are met and/or whether suspension, disbarment and/or prefiling restrictions are proper against a lawyer accused of a bar

rule violation and/or whether a [sanction] should be removed [,]" thereby violating Rosenberg's due process rights. *See id.* ¶ 16.

Rosenberg brings First Amendment retaliation claims under 42 U.S.C. § 1983 against all three Defendants, alleging that their actions were motivated or substantially caused by Rosenberg's exercise of a right protected by the First Amendment, and that these actions caused him "some injury." *Id.* ¶¶ 42-45, 48-50, 53-55. Rosenberg seeks monetary relief, declaratory relief, and injunctive relief against Defendant Avery; declaratory relief against Defendant Anderson; and declaratory relief against Defendant Creaser. *Id.* ¶¶ 46, 51, 56.

In addition, specifically, as to Defendant Avery, Rosenberg brings a civil antitrust claim under 15 U.S.C. §§ 1-2, 15, and 26. Rosenberg alleges that Defendant Avery, in her official capacity as an agent of The Florida Bar, used "its monopoly power in the authority to prosecute the Bar Code to restrain competition in the sale of law advice and representation service (ie [sic] the practice of law) in Florida in violation of the Sherman Act." *See id.* ¶ 29. Rosenberg alleges that because "the Supreme Court of Florida enacted the Bar Code, the Supreme Court of Florida has an interest in any challenge to the constitutionality of any Bar Code Rule, which means that in a bar disciplinary case the Supreme Court of Florida cannot be a neutral and detached decision-maker." *Id.* ¶ 31. The Florida Bar, Rosenberg alleges, "pushed Rosenberg into an unfair system which time and effort has proven is deficient." *Id.* ¶ 32. Together, Rosenberg alleges, "The Florida Bar and the Supreme Court of Florida conspired to make a group boycott of" him. *Id.* ¶ 36. Rosenberg alleges that he suffered "a group boycott in the form of a suspension, disbarment and permanent disbarment, followed by reciprocal disbarments in Massachusetts and New York." *Id.* ¶ 39. Finally, Rosenberg alleges that he was "injured in his business or property by reason of things forbidden in the antitrust laws in that he was restrained from practicing law

in Florida… and caused to spend time and money in litigations trying to undo the antitrust harm." *Id.* ¶ 40. Rosenberg seeks treble damages and an order permanently enjoining Defendant Avery, in her official capacity, from requiring Rosenberg to be a member in good standing with The Florida Bar "in connection with the sale of law advice and representation services in Florida." *Id.* ¶ 41.

## II. Procedural History[1]

On October 9, 2025, this Court granted Defendants Avery's and Anderson's motions to dismiss the Complaint, denied Rosenberg's motions for default judgment as moot, granted in part and denied in part Defendant Creaser's motion to dismiss the Complaint, denied Rosenberg's motion for a preliminary injunction, and granted Rosenberg's amended motion to amend the Complaint. ECF No. 132. On October 12, 2025, Rosenberg filed his Second Amended Complaint. ECF No. 134.

On November 12, 2025, this Court set briefing schedules for the Defendants' Motions to Dismiss Rosenberg's SAC. ECF No. 145. On December 5, 2025, Defendant Avery filed a Motion to Dismiss the SAC. ECF No. 146. On December 10, 2025, Rosenberg filed his Opposition to Defendant Avery's Motion to Dismiss the SAC. ECF No. 149. That same day, Defendant Creaser filed a Motion to Dismiss the SAC and a supporting memorandum and declaration. ECF Nos. 150-53. On December 11, 2025, Rosenberg filed his Opposition to Defendant Creaser's Motion to Dismiss the SAC. ECF No. 153. On December 17, 2025, Defendant Anderson filed a Motion to Dismiss the SAC, and a supporting memorandum and declaration. ECF Nos. 154-57. That same day, Rosenberg filed his Opposition to Defendant Anderson's Motion to Dismiss the SAC. ECF No. 158. On January 9, 2026, Defendant Creaser

[1] For the full procedural history see this Court's first Opinion & Order. ECF No. 132.

filed a Reply in further support of his motion to dismiss SAC.

Additionally—as of this order and opinion—Rosenberg filed a letter motion and memorandum requesting a pre-motion conference ahead of filing a motion to sever claims and "transfer them to appropriate jurisdictions where venue is proper." ECF Nos. 165-166. On September 9, 2026. Defendant Avery filed her opposition to Rosenberg's letter motion. ECF No. 167.

## LEGAL STANDARD

### I. Motion to Dismiss for Lack of Personal Jurisdiction

Rule 12(b)(2) mandates dismissal of an action against any defendant over whom a Court lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "[T]he plaintiff bears the burden of establishing personal jurisdiction over the defendant." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (internal quotation marks and citations omitted). "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's prima facie showing may be established solely by allegations." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (internal quotation marks and citations omitted). "This showing may be made through the plaintiff's own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *S. New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (internal quotation marks and citations omitted).

### II. Motion to Dismiss for Lack of Subject-Matter Jurisdiction

When presented with motions to dismiss on both 12(b)(1) and 12(b)(6) grounds, a court must first decide the 12(b)(1) motion because defenses and objections are moot if the

court does not have subject matter jurisdiction over the complaint. *See Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 675 (2d Cir. 1990). A case may be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A court may refer to evidence outside the pleadings in resolving a motion to dismiss for lack of subject matter jurisdiction. *Id.* "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.*

**III. Motion to Dismiss for Failure to State a Claim**

When resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiffs' favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co*., 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citations omitted). Thus, "[t]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. However, the Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

Ordinarily, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted) (internal quotations omitted). But when *pro se* litigants, like Mr. Rosenberg, have legal training and experience, they are "not entitled to liberal construction of [their] pleadings." *See Weissbrod v. Gonzalez,* 576 F. App'x 18, 19 (2d Cir. 2014) (citing *Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010)).

## DISCUSSION

The Court begins by summarizing the Defendants' pending motions to dismiss the Second Amended Complaint. Defendant Avery asserts that the Court lacks personal jurisdiction over her, as well as subject matter jurisdiction over the case, and, further, that Rosenberg fails to make a claim upon which relief can be granted. Defendant Anderson seeks dismissal primarily on the basis that the Court does not have personal jurisdiction over her and also joins in Defendant Avery's arguments regarding subject matter jurisdiction and the sufficiency of Rosenberg's claims. Defendant Creaser asserts that Rosenberg lacks Article III standing, and that Rosenberg fails to make a claim upon which relief can be granted.

First, the Court considers whether it has personal jurisdiction over Defendants Avery and Anderson. Concluding that it does not, the Court next considers whether Rosenberg's claims against Defendant Creaser have Article III standing and finds that two of the three constitutional requirements—traceability and redressability—have not been satisfied. Finally, even if the Court had standing over Rosenberg's claims against Defendant Creaser, the Court finds that Rosenberg has failed to state a claim and GRANTS Creaser's motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6).

### I. The Court Lacks Personal Jurisdiction Over Defendants Avery and Anderson

Rosenberg does not claim that Defendants Avery and Anderson have such continuous or systematic contacts with New York such that they are essentially "at home" in the state, so the Court need not engage in general jurisdictional analysis. Instead, it considers whether it has specific personal jurisdiction over them.

A New York court may exercise personal jurisdiction over an out-of-state defendant if "New York law would confer upon its courts the jurisdiction to reach the defendant" and, so finding, if "extension of jurisdiction in such a case would be permissible under the Due Process Clause of the Fourteenth Amendment. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 305 F.3d 120, 124 (2d Cir. 2003). To establish specific personal jurisdiction over a foreign defendant under New York law, a plaintiff must show that the defendant "committed acts within the scope of New York's long-arm statute, [N.Y. C.P.L.R.] § 302." *Schultz v. Safra Nat. Bank of New York,* 377 F. App'x. 101, 102 (2d Cir. 2010).

Under New York's long-arm statute, courts may exercise specific personal jurisdiction over a nondomiciliary if a party (1) transacts business in New York, (2) commits a tortious act (except defamation) in New York, (3) commits a tortious act (except defamation) outside of New York that causes injury within New York, or (4) owns, uses, or possesses real property in New York. *See* N.Y. C.P.L.R. § 302(a). A cause of action against that party must "aris[e] from" the aforementioned acts. *See id.*

Here, Rosenberg has not alleged that Defendants Avery and Anderson committed a tortious act within New York or that they own, use, or possess real property in New York. Thus, the claim that the contacts from Florida and Massachusetts "pushed" New York to discipline is best suited for analysis under N.Y. C.P.L.R. § 302(a)(1) as transacting business in New York or under § 302(a)(3) as a tortious act committed outside of New York that

causes injury within New York. As the Court explains below, Rosenberg has not made a case under either basis.

### A. Rosenberg Fails to Allege Personal Jurisdiction Under N.Y. C.P.L.R. § 302(a)(1)

To determine jurisdiction under § 302(a)(1), a court must decide (1) whether the defendant "transacts any business" in New York and, if so, (2) whether this cause of action "aris[es] from" such a business transaction. *American Girl, LLC v. Zembrka*, 118 F.4th 271, 277 (2d Cir. 2024), *cert. denied*, No. 24-653, 2025 WL 247472 (Jan. 21, 2025); *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007); *see Deutsche Bank Sec., Inc. v. Montana Bd. of Investments*, 7 N.Y.3d 65, 71 (N.Y. 2006).

"Transacting business under § 302(a)(1) means 'purposeful activity—some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Am. Girl, LLC*, 118 F.4th at 277. (quoting *Spetner v. Palestine Inv. Bank*, 70 F.4th 632, 639 (2d Cir. 2023) (cleaned up)). "[T]he overriding criterion necessary to establish a transaction of business within the meaning of [N.Y. C.P.L.R. §] 302(a)(1)" is that "a non-domiciliary must commit an act by which it purposefully avails itself of the privilege of conducting activities within New York." *Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 377 (2014) (cleaned up). Moreover, "it is not the quantity but the quality of the contacts that matters under our long-arm jurisdiction analysis." *Id.* at 371.

Courts frequently consider whether defendants' contacts with New York constitute transacting business, weighing "the totality of the defendant's activities within the forum [.] *See Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortgage Invs.*, 510 F.2d 870, 873 (2d Cir. 1975). The jurisprudence is replete with examples of the extent to which a

defendant's contacts directed to New York—including their in-person presence, phone calls, e-mails, contracts, or solicitations (among other things)—can amount to a transaction under N.Y. C.P.L.R. § 302(a)(1). *See Best Van Lines*, 490 F.3d 239, 246–48 (collecting cases). Indeed, "proof of one transaction," or a "single act," "in New York is sufficient to invoke [long-arm] jurisdiction, even though the defendant never enters New York[.]" *Deutsche Bank*, 7 N.Y.3d at 71 (internal quotation marks omitted).

Rosenberg alleges that "Florida's and Massachusetts's contacts with New York, each pushing Rosenberg to stop practicing in New York as a result of its disciplinary order(s) against Rosenberg, make each, Florida and Massachusetts, have sufficient purposeful contacts with New York to give this Court personal jurisdiction over Ms. Avery in her official capacity and Ms. Anderson in her official capacity." SAC. ¶ 12. He adds that "[s]ince the New York reciprocal discipline is related to the Florida and Massachusetts discipline… this Court has personal jurisdiction. But-for the Florida discipline, Erwin Rosenberg would not have been disciplined in Massachusetts nor New York." ECF No. 66 at 4.

Rosenberg alleges that Defendants Avery and Anderson "directed activities towards New York or purposefully availed themselves of the privilege of conducting an activity in New York," and that these contacts were "not merely incidental to the disciplinary proceedings in Florida and Massachusetts since the Supreme Court of Florida and the Supreme Judicial Court of Massachusetts participate in the ABA National Lawyer Reggulatory [sic] Data Bank which is intended to promote reciprocal discipline." SAC. ¶ 57.

But to determine whether personal jurisdiction exists in this case, the key question is not whether the claims in Florida and Massachusetts are *related* to those in New York or

whether the Attorney Grievance Committee for the Third Judicial Department ("AGC") considered the discipline from the other states. The question is much more specific: Has Rosenberg shown that Defendants Avery and Anderson (or the bar authorities with which they are associated) engaged in *any* single act amounting to a business transaction in New York?

Rosenberg makes no allegations that Defendants Avery and Anderson (or anyone from their respective bar authorities) ever appeared before, called, e-mailed, petitioned, or filed a complaint with the Attorney Grievance Committee of the Third Judicial Department, besides alleging that the Supreme Court of Florida and the Supreme Judicial Court of Massachusetts participate in the ABA National Lawyer Regulatory Data Bank. Despite the Court's substantial recitation of the facts alleged in Rosenberg's SAC (as well as those gleaned from the numerous underlying judicial proceedings in this case), the Court cannot identify any facts from which it could infer that Defendants Avery and Anderson directed any activities toward New York or purposefully availed themselves of the privilege of conducting any activities in New York. Rosenberg's allegation regarding the ABA National Lawyer Regulatory Data Bank fails to suggest that Defendants Avery and Anderson directed any activities toward New York because the data bank is a "national repository of information concerning public regulatory actions relating to lawyers throughout the United States." SAC. ¶ 58. Thus, Rosenberg's allegations as to this Court's jurisdiction over Defendants Avery and Anderson fail.

Even if the Court accepts that Rosenberg would not have received reciprocal discipline in New York but for the Florida or Massachusetts discipline, the Court still cannot draw an inference that Defendants Avery and Anderson engaged in conduct that was

anything but incidental. Indeed, the Court has identified another case in this Circuit that considered a similar question: *Grundstein v. Eide* involved a plaintiff residing in Vermont who was licensed to practice law in Washington State until he was disbarred, leading the plaintiff to sue Washington State bar officials in Vermont federal court, No. 13-cv-300, 2014 WL 11462807, at *1 (D. Vt. May 15, 2014). The plaintiff claimed that his Washington discipline caused him reputational harm in Vermont and prevented him from sitting for the Vermont bar exam. *Id.* at *4.

In its jurisdictional analysis, the court concluded that it lacked personal jurisdiction over the Washington State bar officials, in part because "[t]he Washington disciplinary proceeding concerned Mr. Grundstein's Washington bar license, and the primary impact of the proceeding was to rescind Mr. Grundstein's ability to practice law in the State of Washington. Defendants did not initiate the disciplinary proceeding to prevent him from sitting for the Vermont bar exam or to prevent him from practicing law in Vermont." *Id.* So too here: to the extent Defendants Anderson and Avery had contacts with New York, there is nothing in the record that suggests such contacts were not merely incidental to the disciplinary proceedings in Florida and Massachusetts.

The *Grundstein* court relied on an out-of-circuit case that is even more illustrative. In *United States v. Ferrara*, a District of Columbia federal court found that it lacked personal jurisdiction over claims against the New Mexico chief disciplinary counsel where the plaintiff's subsequent inability to practice law in the District of Columbia was "incidental, not deliberate" to his prior discipline in New Mexico. 847 F. Supp. 964, 967–68 (D.D.C. 1993). Like in the instant case, the plaintiff in *Ferrara* failed to demonstrate that the "defendant has purposefully directed her conduct at this jurisdiction[.]" *Id.* at 967. And like

the court in *Ferrara*, this Court cannot identify enough contacts by Defendants Anderson and Avery such that it could exercise personal jurisdiction over them on this basis. *Id.* at 970. Moreover, the Court notes *Ferrara*'s caution that to hold otherwise "would endorse an interpretation of personal jurisdiction under which defendant—and, for that matter, any state seeking to enforce its disciplinary rules against members of its bar—could potentially be subject to suit in any other state where its licensed attorneys chose to practice[.]" *Id.* at 968.

In fact, to the extent Rosenberg alleges that Florida's purported "push" is actually the Florida Bar Rule that required Rosenberg to notify the New York bar authorities of his Florida discipline, that Rosenberg's contacts with New York triggered the sanctions, not Defendants' directing contact toward New York. Such "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *see also Williams v. Beemiller, Inc.*, 33 N.Y.3d 523, 529 (2019) ("[T]he relationship between defendant and the forum state must arise out of defendant's own contacts with the forum and not 'contacts between the plaintiff (or third parties) and the forum State[.]'") (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)).

### B. Rosenberg Fails to Allege Personal Jurisdiction Under N.Y. C.P.L.R. § 302(a)(3)

Turning to the other possible basis for personal jurisdiction—that Defendants Avery and Anderson committed a tortious act outside of New York that causes injury within New York—Rosenberg must also have alleged that Defendants Avery and Anderson:

> (i) regularly do[] or solicit[] business, or engage[] in any other persistent course of conduct, or derive[] substantial revenue from goods used or consumed or services rendered, in the state, or
>
> (ii) expect[] or should reasonably expect the act to have consequences in the state and derive[] substantial revenue from interstate or international commerce

*See* N.Y. C.P.L.R. § 302(a)(3). First, Rosenberg does not assert any tortious acts, but even if he did, although Rosenberg alleges that the contacts from Florida and Massachusetts are "related" and "purposeful," these allegations are conclusory and do not satisfy the additional requirements under N.Y. C.P.L.R. § 302(a)(3)(i) or (ii). First, Rosenberg has not demonstrated that Defendants Avery and Anderson "regularly solicit business in New York or engage in any persistent course of conduct within New York." *Girl Scouts of U.S. v. Steir*, 102 F. App'x 217, 220 (2d Cir. 2004). Second, he makes no allegations as to any revenue, much less any substantial revenue, derived by Defendants Avery and Anderson by their allegedly tortious acts causing injury in New York. *Id.* at 221.

Rosenberg's own pleadings and supporting materials lack "an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *See S. New Eng. Tel. Co.*, 624 F.3d 123 at 138. Accordingly, Rosenberg has failed to make a prima facie showing of personal jurisdiction over Defendants Avery and Anderson. Therefore, Defendants Avery and Anderson's motions to dismiss under Rule 12(b)(2) are granted, and the Court need not reach their other bases for dismissal.

## II. Rosenberg's Claims Against Defendant Creaser Lack Article III Standing to Seek Prospective Declaratory Relief Because Neither Constitutional Requirement of Traceability nor Redressability are Satisfied

All that remains are Rosenberg's claims against Defendant Creaser, who asserts that Rosenberg lacks Article III standing to seek prospective declaratory relief. *See* ECF No. 152 at 8.

The standing requirements, as governed by Article III of the Constitution, restrict federal courts to the resolution of cases and controversies. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). If a plaintiff lacks Article III standing, a court has no subject matter

jurisdiction to hear their claim. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, LLC*, 433 F.3d 181, 198 (2d Cir. 2005). To ensure that this requirement is met, the party invoking federal jurisdiction bears the burden of establishing standing—the personal interest that must exist at the start of the litigation. *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008); *Lujan*, 504 U.S. at 561; *Gonzalez v. Costco Wholesale Corp.*, No. 16CV2590NGGJO, 2018 WL 4783962, at *3 (E.D.N.Y. Sept. 29, 2018). Moreover, because "standing is not dispersed in gross," a plaintiff "must demonstrate standing for *each* claim that [he] press[es] and for *each* form of relief that [he] seek[s]." *Doe v. Hochul*, 139 F.4th 165, 185 (2d Cir. 2025) (alterations adopted) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)).

To satisfy Article III's standing requirements, "a plaintiff must demonstrate: (1) injury-in-fact… (2) causation of the injury, which means that the injury is 'fairly traceable' to the challenged action of the defendant, and (3) redressability, which means that it is 'likely,' not speculative, that a favorable decision by a court will redress the injury." *Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 103 (2d Cir. 2018) (quoting *Lujan*, 504 U.S. at 560-61; *Knight v. City of N.Y.*, 164 F.4th, 173-178 (2d Cir. 2026). The "elements are conjunctive, so that a failure of any of the three elements deprives a plaintiff of standing to maintain an action in federal court." *Lower E. Side People's Fed. Credit Union v. Trump*, 289 F. Supp. 3d 568, 575 (S.D.N.Y. 2018).

As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing all three elements. *See Guan v. Mayorkas*, 530 F. Supp. 3d 237, 253 (E.D.N.Y. 2021) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 330 (2016)). "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of

proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Guan*, 530 F. Supp. 3d. at 253 (citing *Lujan*, 504 U.S. at 561).

When a case is in the pleading stage, "[f]or purposes of ruling on a motion to dismiss for want of standing, the trial… courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). To survive a motion to dismiss based on Rule 12(b)(1), "the complaint's factual allegations of standing must be plausible and nonconclusory," and "the plaintiff must clearly allege facts in his complaint demonstrating each element of standing." *Banco San Juan Internacional, Inc. v. Fed. Rsrv. Bank of N.Y.*, 176 F.4th 163, 184 (2d Cir. 2026) (citing *Luga v. City of Troy*, 114 F.4th 80, 87 (2d Cir. 2024).

Defendant Creaser does not appear to dispute that Rosenberg's claims satisfy the first element of injury-in-fact for Article III standing, so the Court need not engage with this step of the three-part inquiry. *See* ECF No. 152 at 8. But Defendant Creaser does assert that Rosenberg lacks standing because neither of the two other elements required for standing, traceability and redressability, are satisfied.

### C. Rosenberg's Injuries-In-Fact Are Not "Fairly" Traceable to the Challenged Conduct of Defendant Creaser or the Attorney Grievance Committee

Traceability is a requirement of standing "meant to ensure that the injury was caused by the conduct complained of rather than by an independent action of some third party not before the court." *Gonzalez v. Costco Wholesale Corp.*, No. 16CV2590NGGJO, 2018 WL 4783962, at *4 (E.D.N.Y. Sept. 29, 2018). This requirement "does not create an onerous standard." *Ateres Bais Yaakov Acad. of Rockland v. Town of Clarkstown*, 88 F.4th 344, 352-53 (2d Cir. 2023). For example, a "defendant's conduct that injures a plaintiff but does so only indirectly, after intervening conduct by another person, may suffice for Article III

standing." *Brooklyn of Nat'l Ass'n for the Advancement of Colored People v. Kosinski*, 735 F. Supp. 3d 421, 440 (S.D.N.Y. 2024) (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 46, 55-56 (2d Cir. 2016)).

Rosenberg alleges that Defendant Creaser's actions caused him two injuries: the loss of his license to practice law and the loss of his ability to exercise his First Amendment right to engage in lawyerly professional speech in the State of New York. *See* ECF No. 153 at 5. These injuries, however, cannot be traced back to either Defendant Creaser or the AGC, but, instead, inevitably trace back to the Appellate Division, which, on February 10, 2022, ordered Rosenberg's disbarment and the striking of his name from the roll of attorneys and counselors-at-law of the State of New York. *See* ECF No. 62-1 at 5.

Pursuant to 22 N.Y.C.R.R. § 1240.13, which provides for Discipline for Misconduct in a Foreign Jurisdiction, the Appellate Division directed Rosenberg to demonstrate, on terms it deems just, why discipline should not be imposed in New York for the underlying conduct that resulted in his disbarment in Florida and Massachusetts. *Id.* § 1240.13(a). Defendant Creaser and the AGC were charged only with submitting to the Appellate Division an application containing proof that Rosenberg had been disciplined in Florida and Massachusetts. *Id.* Even without the actions of Defendant Creaser and the AGC, in a hypothetical scenario, the Appellate Division still should have been alerted of Florida's and Massachusetts's disciplinary proceedings against Rosenberg because he was required to advise the court of these developments within 30 days of each taking place. *Id.* § 1240.13(d). Furthermore, Rosenberg, not Defendant Creaser nor the AGC, acknowledged before the Appellate Division that "he did not give notice of the disciplinary orders issued against him," and he did not dispute that "he continued to practice law regardless of the disciplinary

orders in place." *See* ECF No. 62-1 at 4.

Rosenberg's acknowledgements, along with evidentiary findings of "respondent's contemptuous defiance of court orders, refusal to acknowledge the impropriety of his actions and his lack of remorse," led the Appellate Division to conclude that "respondent should be disbarred in this state." *Id.* Therefore, Rosenberg was disciplined for the misconduct he committed in the foreign jurisdictions only *after* the Appellate Division determined, independently of Defendant Creaser and the AGC, that "respondent has not established the invoked defense to the imposition of discipline in this state" and deemed his misconduct as established. *Id.* at 4-5; 22 N.Y.C.R.R. § 1240.13(c); 22 N.Y.C.R.R. § 806.13(a). The foregoing facts from the record effectively insulate the Appellate Division's adjudication process from the supposed "false impression"[2] Rosenberg attributes to Defendant Creaser and the AGC in his procedural due process claim. *See* ECF No. 134 at 7. Rosenberg's First Amendment retaliation claim also cannot be traced to Defendant Creaser and the AGC because the authority to disbar him in the State of New York and thereby deprive him of his ability to exercise his First Amendment right to engage in lawyerly professional speech was possessed exclusively by the Appellate Division.

Since neither of Rosenberg's injuries can be fairly traced to the challenged conduct of Defendant Creaser and the AGC, both his claims against them are without standing.

### D. Rosenberg's Injuries Are Not Redressable by Prospective Declaratory Relief

Even if Rosenberg's injuries were fairly traceable to the challenged conduct of

---

[2] In the SAC, Rosenberg alleges that "The Attorney Grievance Committee for the Third Judicial Department gives a false impression to the judges about Rosenberg's compliance with regard to the Bar rules because the Attorney Grievance Committee for the Third Judicial Department presents its position as if it were the view of an independent prosecutor when in reality it is the view of competitors which have a motivation to remove Rosenberg from the market.," ¶ 26.

Defendant Creaser and the AGC, his claims against them would still fail at the final step of the standing inquiry. The redressability requirement focuses on whether a plaintiff "personally would benefit in a tangible way from the court's intervention," *Warth*, 422 U.S. at 508, i.e., whether "the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision," *Chevron Corp. v. Donziger*, 833 F.3d 74, 121 (2d Cir. 2016) (quoting *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 38 (1976)). To satisfy this requirement, "a plaintiff must show that it is 'likely, as opposed to merely speculative, that the alleged injury will be redressed by a favorable decision.'" *Soule v. Conn. Ass'n of Schs., Inc.*, 90 F.4th 34, 47 (2d Cir. 2023) (en banc) (quoting *Lujan*, 54 U.S. at 561) (internal alterations omitted).

A mismatch between a plaintiff's alleged injury and their requested relief is fatal to establishing redressability. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement."). Moreover, when redress is being sought for injury caused by "the independent action of some third party not before the court," a claim's failure to satisfy the element of traceability guarantees failure at the next step of the inquiry. *Equal Vote Am. Corp. v. Cong.*, 397 F. Supp. 3d 503, 511 (S.D.N.Y. 2019); *see also Knight*, 164 F.4th at 180 (quoting *Food & Drug Admin. v. All. For Hippocratic Med.*, 602 U.S. 367, 380 (2024) ("The second and third standing requirements… are often flip sides of the same coin.") (internal quotation marks omitted); *see also Doe v. Columbia Univ.*, 551 F. Supp. 3d 433, 456 (S.D.N.Y. 2021) (holding that because defendant's challenged conduct was not even a de facto cause of plaintiff's injuries, those injuries "cannot be redressed by a favorable decision in this case.").

Rosenberg asserts that prospective declaratory relief for both claims against Defendant Creaser "may" help him get reinstated as a lawyer in good standing in the State of New York. *See* ECF No. 153 at 5. Rosenberg does not, however, explain how declaratory relief will redress his injuries, which stem entirely from the Appellate Division's Order of Disbarment. Any prospective declaratory relief this Court could provide, directed at Defendant Creaser and the AGC, would be futile because the Order of Disbarment, which the Appellate Division determined and issued independently of those parties, would remain in effect and bar Rosenberg from being reinstated.

"Because redressability is an 'irreducible' component of standing, no federal court has jurisdiction to enter a judgment unless it provides a remedy that can redress the plaintiff's injury." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 291 (2021). Rosenberg fails, in his Second Amended Complaint, to name an injury that is traceable to the challenged conduct of Defendant Creaser or the AGC, or redressable by prospective declaratory relief.

Because Rosenberg's claims against Defendant Creaser and the AGC lack Article III standing, Defendant Creaser's motion to dismiss under Rule 12(b)(1) is granted.

## CONCLUSION

The Court GRANTS Defendant Creaser's motion to dismiss under 12(b)(1) without prejudice. The Court GRANTS Defendants Avery and Anderson's motions under 12(b)(2), to the extent the Court finds it lacks personal jurisdiction. The Court ORDERS the Parties to show cause as to why the case against Avery and Anderson should not be transferred instead of dismissed. If the case is transferred, the Parties should address where the case should be transferred to. Such showing must be made in writing by

October 5, 2026.

The Clerk of Court is respectfully directed to terminate all pending motions.

**SO ORDERED.**

**Dated: September 28, 2026**
**New York, NY**

**ANDREW L. CARTER, JR.**
**United States District Judge**